ATLANTA RAILWAY AND POWER COMPANY *v.*
ATLANTA RAPID TRANSIT COMPANY.

113 481
e123 518

1. An assignment of error upon an order denying an application for injunction, made in the following words : " To which order the plaintiff excepted and now excepts and assigns the same as error, in that it is contrary to the law and the evidence in the case," is good.   The motion to dismiss the writ of error for insufficient assignment of error is overruled.

2. A street-railway company which has constructed and is legally operating a line of railway in the streets of a city is possessed of such a property interest as gives it a legal right to maintain an application to restrain a similar company from interfering with its line of tracks already laid, and from constructing a line of road over its private property without authority of law.   To such an application the city is not a necessary party defendant.

3. Notice of a motion to reconsider the passage of an ordinance by a legislative body of a municipal government, which requires the approval of the mayor to give it force, has no other effect than to prevent the immediate transmission of such ordinance to the mayor for action thereon.   If the motion to reconsider is not made at the next regular meeting, the notice is functus officio, and the ordinance so passed stands as the action of the body which passed it, and, on the adjournment of such meeting, should be transmitted.

(*a*) The action of the general council of the City of Atlanta, in fixing January 7, 1901, as a day for the regular meeting of the aldermanic board, was, under its rules, had by a two-thirds vote.

(*b*) The ordinance in controversy, granting a franchise to construct and operate a line of street-railroad in certain streets, having been legally passed by the two legislative bodies of the City of Atlanta, and approved by the mayor in due time, it operates as a legal and valid consent of the city to the exercise of the powers conferred by law on the Atlanta Rapid Transit Company, upon the terms incorporated in such ordinance.

4. Under the evidence, the trial judge was fully warranted in ruling that Cherokee avenue was one of the public streets of the City of Atlanta.

5. Under the terms of the contract made by the two parties at interest, a connecting track of a street-railway to be made by one of them at Hunter street with the tracks of the street-railway on Whitehall street, which was authorized by the municipal authorities, is not in violation of any legal right of the other owner of an equal interest in and right to use such tracks.

6. No error was committed in refusing the application for injunction.

Argued April 29,—Decided May 20, 1901.

Petition for injunction.   Before Judge Lumpkin.   Fulton superior court.   February 23, 1901.

*Payne & Tye, King & Anderson*, and *Lewis W. Thomas*, for plaintiff.   *Brandon & Arkwright, John L. Hopkins & Sons, King & Spalding*, and *Rosser & Carter*, for defendant.

31

LITTLE, J.  The Atlanta Railway and Power Company, a corporation which maintains and operates lines of street-railway in the City of Atlanta, presented its petition to the judge of the superior court of Fulton county, in effect praying that a certain other corporation, the Atlanta Rapid Transit Company, which also operates lines of street-railway therein, be enjoined from constructing, in whole or in part, a particular line of railway in the streets of said city, which the Transit Company claims it has the legal right to construct and operate under the laws of the State and the ordinances of the City of Atlanta; and also from in any manner interfering with the railway of petitioner already laid in the streets of the city, and the appropriation of certain private property of petitioner to the uses of the defendant in connection with its proposed new line.  It was conceded that the question as to whether the construction sought to be enjoined was authorized by law depended, in a large measure, on the validity of a certain ordinance of the City of Atlanta, which by its terms purported to grant to the Atlanta Rapid Transit Company, under certain conditions, authority "to construct, electrically equip, and operate a line of single or double track street-railway over the following route, viz.:  Commencing on Atlanta avenue, at a point south of about the middle of Grant's Park, running thence west to Cherokee avenue, thence along Cherokee avenue and Thomas street to Woodward avenue, thence west along Woodward avenue to Hill street, along Hill street to Hunter street, and along Hunter street to Whitehall street, with the right to move the tracks of the Atlanta Railway and Power Company on Hunter street, between Frazier and Pryor street, to one side of the center of the street, so as to permit the building of a single track on the other side of the center of the street between these points."  It was contended by the plaintiff that the ordinance was void because it was not legally adopted; that what is described in it as Cherokee avenue is not a public street, but is the private property of the plaintiff; that the construction of the apparently authorized line would conflict with the plaintiff's rights under a contract between it and the defendant as to the use of the street-railway tracks on Whitehall street, from Hunter to Alabama street, and with its rights as to its tracks on Hunter street, between Frazier and Pryor streets.  The brief of evidence is voluminous; such parts of it as may be necessary will be hereafter referred to in con-

.sidering the several issues which arise in the case. The defendant demurred to the petition, and answered, insisting that the ordinance was legally adopted; that Cherokee avenue was one of the public .streets of the City of Atlanta; and that there was nothing in the contract between the plaintiff and defendant which rendered the authority to connect with the Whitehall tracks illegal, or an encroachment of the rights of the plaintiff at Whitehall street or elsewhere. The judge, after hearing evidence, refused an injunction, and held that the ordinance in question was not void on the grounds alleged, that the plaintiff was not entitled to an injunction on the ground of its alleged ownership of the land on Cherokee avenue, and that there is nothing in the contract between the parties as to the Whitehall street tracks which would prevent the use of these tracks in ·connection with this franchise. To the refusal to grant the injunction the Atlanta Railway and Power Company excepted, and such refusal is the error which is assigned for our consideration.

1. On the call of the case a motion was made to dismiss the writ of error, on the grounds that the bill of exceptions does not plainly and specifically set forth the errors alleged to have been committed, and that it does not contain any special assignment of ·error. This must be overruled. After reciting the fact that the judge passed an order on a given date, denying the injunction prayed for, the bill of exceptions recites the following: "To which order the plaintiff excepted, and now excepts, and assigns the same .as error, in that it is contrary to the law and the evidence in the ·case." This exception and assignment of error fully complies with the law.

2. The points made by the demurrer were ruled on by the judge in rendering the opinion under which the injunction was refused. The first of these is, that petitioner had no right to have an injunction restraining the defendant from building its tracks in the .streets of the City of Atlanta under any circumstances, and that the only party having the right to object to such building is the City of Atlanta. The second ground is that the City of Atlanta is a necessary party defendant to the case made by petitioner. Each of these grounds was overruled, the judge saying in reference to the latter: "As I have just decided that plaintiff is entitled to no injunction in respect to Cherokee avenue, this contention of defendant is immaterial at this time. . . So far as this inter-

locutory hearing is concerned, I would incline to hold that the city need not be before the court.    Certainly it is immaterial under the ruling made."    We agree with the trial judge that the City of Atlanta was not a necessary party to this case in passing on the application of the plaintiff to restrain the defendant as prayed for under the allegations made; and we also agree with the ruling made by him that, under the pleadings and evidence, plaintiff had such an interest as authorized it to prosecute an application to restrain the defendant from constructing the line of railway for the want of legal authority.    As a general proposition the right to construct a railway in the streets of a city must rest upon legislative authority so to do.    Primarily, the right of control of streets is in the General Assembly, whether as a matter of fact the fee of the land on which the street is located is in the State, the city, or a private person.    This is so because the only legitimate use which can be made of a street is a public use.    Not in the sense of being public to the inhabitants of the city in which it is located, but to the people at large; and of this public the General Assembly of the State is the only representative.    The power which a municipal government may lawfully exercise over a street is that conferred on it by the General Assembly, either expressly or by implication; and the right primarily to grant authority to an individual or a corporation to occupy a street with cars operated by steam or electric power, although for the convenience of the citizens, does not rest in the municipal government.    While this is true, care has been taken by the framers of our organic law, as well as by our legislators, not to authorize the construction of a railway in the streets of a city against the wishes of the municipal authorities.    Our constitution, in paragraph 20 of section 7, article 3, declares that the General Assembly shall not authorize the construction of any street passenger-railway within the limits of any incorporated town or city without the consent of the corporate authorities.    But when a corporation to duly construct such a railway has been created, and the right to do so conferred, it is within the power of the corporate authorities of the city, in whose streets it is proposed to be constructed, to refuse it admission altogether, as well as to confine it to certain streets and routes, and to impose, as a condition precedent to such construction, such reasonable terms as the corporate authorities, looking to the interests of the citizens, may deem best.    But

when such consent has been given and the railway constructed, then the corporation maintaining and operating it is possessed of certain rights for the enforcement of which it may, of its own accord, seek the protection of the law, both State and municipal; and one of these rights is to exercise the powers given to it without molestation or hindrance. An allegation of the petition is, that another duly incorporated company is undertaking, without legal consent of the corporate authorities, to change the constructed line of railway of the petitioner. If this allegation be true, and the petitioner is about to suffer damage, then it would seem that petitioner, without complaining against the city or any one else, has the right to invoke the interposition of the courts to prevent the damage about to be inflicted upon it. It may be, and doubtless is, true that in the final adjudication of a case which involves the rights and power of the city, as well as those of plaintiff and defendant, in order to bind it by the adjudication the city should be a party. But, for the purposes of an interlocutory injunction, it is our opinion that the city was not a necessary party under the allegations made in the petition.

3. Aside from the minor points which the record presents, the main question to be determined is, whether the ordinance which granted to the Transit Company the rights and powers named therein is a valid and legal ordinance of the City of Atlanta; for, from its validity or invalidity, it must be ascertained whether the City of Atlanta has given its consent that the Transit Company should occupy the streets named in the ordinance, with a line of railway. Inasmuch as the powers which a city government may lawfully exercise must be derived from its charter or the general laws of the State, it is necessary to ascertain what powers have been conferred on the municipal government of the City of Atlanta in certain respects. By an act approved February 8, 1874 (Acts 1874, p. 116), a new charter was established for the City of Atlanta. By this act the legislative department of the city was vested in a mayor, board of aldermen, and board of councilmen. The mayor and board of councilmen are styled the mayor and council, and these, acting with the board of aldermen, are styled the mayor and general council. The term of office of the mayor is fixed at two years, but it is provided that he shall hold his office until his successor is elected and qualified. Councilmen are elected from the different wards of

the city, for a term of two years. The term of an alderman is fixed at three years, and it is prescribed that each member of these two boards composing the general council shall hold his office until his successor is elected and qualified. The times of the regular sessions of the mayor and general council are fixed by the charter on the first and third Mondays in each month. By an amendment of the charter, approved December 23, 1896 (Acts 1896, p. 110), it was provided that the councilmen representing the different wards, and the aldermen representing the city at large, should act as separate and distinct legislative bodies in considering certain resolutions and ordinances, and that "no vote, resolution, or ordinance having for its object . . . the granting of franchises for street-railroads . . shall be voted until the same shall have received a majority of the votes of each of those legislative bodies separately cast." The charter further provides that any one alderman or any two councilmen may give notice of a motion to reconsider, which notice, in either event, shall have the effect of delaying the consideration of the question to be acted on until the next meeting. The mayor presiding over the meeting can have no vote except in case of a tie. It is further provided that the mayor shall have the revision of all ordinances and resolutions passed by the general council, and that the mayor, or, in his absence, the mayor pro tem., shall have four days after the meeting at which the general council voted, or after which the board of aldermen voted thereon, in which to file with the clerk, in writing, his approval or veto.

It was provided in the rules for the government of the mayor and general council, established by that body, that in all cases of a tie the mayor or presiding officer shall cast the deciding vote, but at no other time or under no other circumstances shall he be permitted to vote; and that no alteration or suspension of any rule shall take place without the consent of two thirds of the members present. It appears from the rules adopted by the aldermanic board that regular meetings of that body should be held on Thursdays following the regular meetings of the mayor and council. In relation to the passage of the ordinance the validity of which is under consideration, it appears from the evidence that the Transit Company, on November 19, 1900, filed a petition asking for the right to construct and operate by electricity the line of railway named, with the right to move the tracks of the Power Company on Hun-

ter street, between Frazier and Pryor, to one side of the street, so as to permit the construction of a track on the other side of the center of the street. This petition was referred to the proper committee, which reported that it be granted with certain conditions. After having been adopted by the council, a reconsideration was had and the ordinance again referred to a committee, but it was finally adopted on December 21, 1900, by the council, acting separately from the board of aldermen. At a meeting of the latter board sitting separately, on December 22, 1900, the ordinance was passed by that board, and notice given by one of the aldermen that he would, at the next meeting, submit a motion to reconsider the action in passing the ordinance. A meeting of the board was held January 7, 1901, at which the alderman who had previously given notice of a motion to reconsider refused to make the motion. The mayor pro tem. presiding then ruled that the notice of the motion to reconsider had expired, and directed that the ordinance be transmitted to the mayor for his action; and on the same day it was approved by the mayor. It is claimed that the meeting of the aldermanic board, held on January 7, 1901, was not a regular meeting of that body, and it had therefore no jurisdiction to reconsider any action taken at the previous meeting. That meeting, it is alleged, occurred under the following circumstances: The mayor and general council held a meeting on that day, all of the aldermen, and all save one of the councilmen, being present; the ordinance committee presented to the meeting for adoption a resolution in terms as follows: "Resolved, that a rule, additional to those now in force for the government of the mayor and general council of the City of Atlanta, be and the same is hereby adopted, to be known as aldermanic board rule number three, to wit: The regular meeting of the board of aldermen of each retiring general council, sitting as a separate body, shall convene on the first Monday in January each year, immediately upon the taking of the first recess of the regular meeting held on that day by said retiring general council sitting as a body." This resolution was adopted, three aldermen and nine councilmen voting for it, and two aldermen and four councilmen against it, the resolution being approved by the mayor on the same day. It was further shown, that when the resolution was put on its passage, and the vote taken, there were twelve votes in its favor, and six against its passage, the presiding officer not vot-

ing; and that a meeting of the board of aldermen, under the authority of the resolution, was accordingly had during the recess taken by the general council, on the same day.    After this recess the general council reassembled, together with the newly elected mayor and general council, and, after the newly elected officers were installed, the outgoing mayor and council retired.

It appears also, that a custom had existed in the City of Atlanta for a number of years, under which the newly elected mayor, aldermen, and councilmen did not qualify and enter upon the discharge of their duties until after a meeting was held by the retiring mayor and general council, on the first Monday in January of the term for which the new officers had been elected.    Under these facts the contention of counsel for plaintiff in error is, that although the ordinance was passed originally with due formality and regularity, both by the board of aldermen and councilmen, it never became a legal ordinance, because, at the meeting when the aldermen voted upon it, a notice of a motion to reconsider was given, and that notice had the effect of preventing the ordinance from ever becoming a legal act on the part of the city government, because the board of aldermen could not thereafter hold a regular meeting during their term of office, inasmuch as the day for holding such regular meeting, under the rules, came at a time when the terms of the old board had expired and the new board of aldermen was in office; and that the meeting of the board of aldermen of January 7 was not a regular meeting, and the motion to reconsider could not then have properly been made.    We do not assent to this conclusion.    When the ordinance was passed with due formality and regularity by the council, and the action of that body had been concurred in by the board of aldermen, the ordinance thus acted on, for the time being, at least so far as the two boards could make it so, became an enacted measure.    The only effect that notice of a motion to reconsider could have had on the measure thus adopted was to postpone its transmission to the mayor for his action, and to hold it up until the next regular meeting, pending the right of the aldermanic board to reconsider its action in passing it, if it saw fit.    It did not otherwise affect its legality; and unless the action which had been had was reconsidered at the next meeting, the measure thereafter stood as the action of the board of aldermen on that subject.    If the contention of counsel be correct, it is possible

that a notice of a motion to reconsider the action of a deliberative body can render nugatory the solemn affirmative action of that body. We apprehend that under no conceivable circumstances can such a notice have such effect. Ordinarily, when notice of a motion to reconsider is given in a body which has regular meetings, the time of making such motion is limited to the next regular meeting, and usually after the reading of the minutes of that body. We understand the rule further to be, that a reconsideration may be had and a motion therefor made at any time after the action sought to be reconsidered has been had, in a body which will not regularly meet again; a simple notice of a motion to reconsider, in a body which will not have another regular meeting, has, of itself, no force, and the action taken will stand. However this may be, the charter of the City of Atlanta does not recognize any cessation of the life of the board of aldermen as a part of the municipal government. On the contrary, while the personnel of the board is changed, at regular intervals, its legal existence is continuous; consequently, when notice of a motion to reconsider was given at the meeting of the board which took the action sought to be reconsidered, under the charter that notice delayed the transmission of the ordinance until the next regular meeting of the board, without regard to its personnel. If, when that meeting was had, the board of aldermen as then constituted could not act upon the reconsideration, the action already taken on the matter was a finality, and, after the adjournment of that meeting, was in no way affected by the notice. If at the next regular meeting it had jurisdiction to reconsider the former action, and no motion to reconsider was made, the notice of the intention to so move was functus officio, the former action stood, and it was in order for the measure to be transmitted as the action of the body. Applying this reasoning, which is based on the rules of parliamentary law, to the case in hand, it becomes immaterial, so far as regards the validity of the ordinance in question, whether the mayor and general council could, or did, make a valid rule for a meeting of the (old) aldermanic board on January 7, 1901. The charter of the city fixes a meeting of the legislative body for that day; it was the next meeting after the notice of a motion to reconsider the action in passing the ordinance had been given. If the meeting of the old board held on that day was a regular, legal meeting of the board, and a motion to reconsider was

not made, the privilege of reconsideration passed with the adjournment. If, on the contrary, it was not a legal regular meeting, and if the new board held a meeting on that day, notwithstanding the change of its constituent members, it was the legal board of aldermen, and its meeting a regular one. If such new board had no jurisdiction to reconsider this action of the former board, the effect of the notice nevertheless expired with its adjournment and nobody was in existence which could so reconsider. The failure to take notice of this effect at the time the notice was given can not inure to the hurt of the ordinance, for it was not then a pending measure, but a measure which had been passed; and instead of giving a notice of a motion to reconsider, the motion itself was then in order to have been made, because a notice could not thereafter be effectual to bring about the motion. A motion for reconsideration is a weapon which a minority can frequently use with great effect, but never sufficiently so to defeat the wishes of a resisting majority. We may say, in passing, that, in our opinion, the rule adopted by the general council fixing the first Monday in January as a day for the regular meeting of the retiring aldermanic board was legally adopted, under the rule prescribed for the government of that body, which declares that the presiding officer shall under no circumstances vote, except in the case of a tie. If he was prohibited by the rule from voting, certainly the rule would not require him to be counted among the voters. Our conclusion is, that the ordinance received a legal vote adopting it, separately, in each of the boards; that the notice of a motion to reconsider it had no effect on the action of the aldermanic board, other than to prevent its transmission to the mayor until the subsequent regular meeting of that board, held on January 7, 1901, and, even if the meeting of the aldermanic board, provided for by the general council on January 7, was not a legal meeting, yet, as the ordinance has never been reconsidered by the aldermanic board at any regular meeting, and the time for its reconsideration having lapsed with the adjournment of such regular meeting, and having been approved by the mayor, it became, on such approval, valid and legal, and entitled to full effect. Under admissions of counsel made in the argument of the case in this court, it is not necessary to pass separately on the question of the right of the Transit Company to remove existing track of the plaintiff on Hunter street as authorized by such ordinance.

4. It is further urged that the ordinance, in that it confers upon the Rapid Transit Company the right to construct its line along and upon Cherokee avenue, is invalid, because that avenue is not such a public street as that, even with the consent of the city authorities, the defendant may lay its track thereon and use it in the operation of a street-railway. It is not necessary to make any detailed statement of the evidence contained in the record as to the status of Cherokee avenue as a public street. It is claimed by the plaintiff that the Metropolitan Street Railroad Company, its predecessor in title, obtained from the then owners a strip of land twenty-five feet in width, on the east portion of what is now known as Cherokee avenue, for the construction of its track and stations in the operation of a street-railroad. It is not questioned that, at the time the Metropolitan Company obtained whatever rights were conferred on it by the owner, no such street as Cherokee avenue existed. Nor can it be controverted that such a street now exists, and that it is paved, lighted, has sidewalks, and many persons have erected dwellings fronting on such street. It is conceded that Cherokee avenue is fifty feet wide, consisting of the twenty-five feet originally conveyed by the owner to the Metropolitan Street Railroad Company, and twenty-five feet additional on the west of that strip, which was purchased by the city. Nor is the fact denied that the track of the plaintiff company has been removed from where it was originally placed and operated, at the request of the city. It is claimed by the plaintiff in error that it was not its purpose to dedicate any portion of the land it occupied or was entitled to as a public street, but that the public authorities being unable to construct a driveway for pleasure vehicles in Grant Park, to which it is adjacent, it consented to the opening, paving, lighting, and improvement which was made by the city and county, in the belief that the same would be used as a driveway, and not that its own land and that added would be transformed into one of the public streets of the city; and that all that was done by it from which a dedication could be inferred was done under such belief. Section 3591 of the Civil Code declares: "If the owner of lands, either expressly or by his acts, dedicates the same to public use, and the same is so used for such a length of time that the public accommodation or private rights might be materially affected by an interruption of the enjoyment, he can not afterward appropriate it to private purposes."

This is but a reiteration of the common-law rule. The first time that the doctrine of dedication was expounded by this court was in the case of the *Mayor &c. of Macon* v. *Franklin*, 12 *Ga.* 239, in which case Judge Nisbet (as he uniformly did in other cases) delivered an exhaustive and instructive opinion. The court there ruled that a dedication to a public use is effected when one, being the owner of lands, consents, either expressly or by his action, that it may be used by the public for a particular purpose. Since the date of that decision, which has stood as the leading case in Georgia on this subject, numerous cases have invoked confirmatory rulings by this court on the points there decided. See *Parsons* v. *University*, 44 *Ga.* 529; *Chapman* v. *Floyd*, 68 *Ga.* 457; *Southwestern R. R.* v. *Mitchell*, 69 *Ga.* 123; *City Council of Augusta* v. *Burum*, 93 *Ga.* 68, and cases there cited.

There is evidence in the record tending to show that the officers of the plaintiff had full knowledge that the City of Atlanta had located Cherokee avenue as a public street; that the engineer of the company moved the track of plaintiff and supervised the whole work; that the city formally ordered it opened as a street, and bought twenty-five feet of land to be added to the strip originally occupied by the plaintiff, to make a street; that it spent money for sewers, curbing, etc.; and, lastly, that it had been continuously used as a street. An examination of the record in the case discloses that the officers of the plaintiff believed that Cherokee avenue was originally intended to be opened as a pleasure drive contiguous to the park; yet when this use, which was consented to, became enlarged into all the general uses of a street, as some of the evidence shows, they should have interposed, and have asserted any rights the company had. They permitted the City of Atlanta to declare and open it, together with other land contiguous to it, as a public street, to spend sums of money improving the whole as a street; and these acts induced persons to believe it to be a public street, and, acting on such belief, to erect houses fronting thereon, all of which appears to have been done without a protest; and the further fact appears that the whole of said land has been continuously so used by the public as one of the streets of the city, and that its discontinuance at its present width and location would work inconvenience to the public. The conclusion is inevitable that the trial judge was fully warranted in ruling that Cherokee avenue

should be properly deemed and held as one of the streets of the City of Atlanta. Being so, like they could in any other of its streets, the municipal authorities had the right to grant the defendant company the privilege of laying its tracks on that avenue and operating street-cars thereon for the benefit of the public.

4. The remaining question for determination is the right of the Transit Company to enter the track laid on Whitehall street by means of a connection with its Hunter street line. Whether this right exists depends upon a construction of the contract between the parties. It is claimed by the plaintiff in error that the Transit Company has no right, under this contract, to cut into the Whitehall street track and make additional connections and turnouts with it, even though the inconvenience sustained by the Power Company by such connections and turnouts will be limited; and that such connection can in no event be made without the consent of the Power Company. It appears that a contract was entered into between the parties on November 13, 1900, which contains a number of stipulations; that one which bears on the question under consideration is stated in the record in the following language: "The Atlanta Rapid Transit Company should have the immediate right to operate its cars over Whitehall street, from Mitchell to Alabama street, upon paying the amount which had been awarded by the assessors in condemnation proceedings. Upon doing so it should acquire an equal interest in the tracks and other property of the Atlanta Railway & Power Company, situated on Whitehall street between said points. That the Atlanta Rapid Transit Company should move the single track of the Atlanta Railway & Power Company on Whitehall street from Alabama to Hunter street to proper position on the east side of the street, and should construct its own additional track, from Hunter to Alabama street, on the west side of Whitehall street so as to make double tracks for the joint use of both roads. It should put in two way-switches and curves at the corner of Whitehall and Hunter streets, so as to connect the single track of the Atlanta Railway & Power Company on Hunter street with both the tracks on Whitehall street, and should put in switches and curves at the corner of Alabama and Whitehall streets, connecting the two tracks of the Atlanta Railway & Power Company on Alabama street with both tracks on Whitehall street; both companies to be thereafter equally interested in the double tracks on Whitehall street from Mitchell to Alabama streets."

The plaintiff in error contends that it is not the right of either party under this agreement to enter these tracks at a different point than that specified in the agreement, nor to put any additional curves and switches which would operate to delay the cars passing over such track, without the consent of the other. To this contention it may be replied that, by a natural construction of the terms of the contract, a right seems to have been given to the Transit Company to operate its cars over the Whitehall tracks (between points named) for a consideration paid, and that such payment should give the Transit Company an equal interest in the tracks on Whitehall street between the designated points. The fact that the Transit Company, under the agreement, was to put in certain switches and curves at Whitehall and Hunter streets, so as to connect the Power Company's tracks on Hunter with the tracks on Whitehall, and switches at the corner of Alabama and Whitehall, so as to connect the tracks of the Power Company on Alabama with the tracks on Whitehall, does not, in our judgment, in the absence of appropriate terms of limitation, restrict the power of the Transit Company to make a connection between the tracks on Whitehall with its line on Hunter street. The contract does not limit the right of the Transit Company to the operation of any particular cars, or cars from any particular connection, over the Whitehall tracks. Necessarily, the contemplation of each of the parties in the execution of the contract was to facilitate its business, that of the operation of street passenger-cars; and it could not have been in contemplation that the use to be made of the Whitehall street tracks by the Transit Company was simply the operation of cars over the tracks in which it acquired an interest as a line; necessarily, as it seems to us, the cars contemplated to be moved on this limited length of track were to be brought over other lines to this central part of the city. The provisions in the contract specifying what immediate connections by switches should be made at Whitehall and Hunter streets, and Whitehall and Alabama streets, for the benefit of the Power Company, were required for present use, and when it was stipulated that, after payment of a sum awarded and making certain specified connections, both companies should thereafter be equally interested in the tracks on Whitehall from Mitchell to Alabama streets, the contract, by the terms employed, conferred on the Transit Company full right, in our opin-

ion, to make the proposed connection at Hunter street. To say that the Transit Company had an equal interest in, and an equal right to operate its cars over, the Whitehall street tracks with the Power Company, without any limitation of the number of cars, and without any restriction as to connections, and to deny the right of connection by which alone its cars could be brought to the Whitehall street tracks, is, in our judgment, an inconsistency not contemplated by the terms of the contract. Such a use would have been a limited one, which is not expressed in the contract, nor naturally deducible from its terms.

In our opinion no error was committed in refusing to grant the injunction.　　*Judgment affirmed.　　All the Justices concurring.*