## FARMER *v.* MAYOR AND COUNCIL OF THOMSON.

1. The act of 1907 (Acts 1907, p. 944), authorizing the establishment of a municipal school system in the Town of Thomson and providing for the issuing of bonds for the building and equipping of schoolhouses, was not unconstitutional on the ground that the act of 1905 (Acts 1905, p. 425), as amended by the act of 1906 (Acts 1906, p. 61), made provision by general law for the laying out of counties into school districts, and the levying of school taxes in such districts after an election therefor, and that the act of 1907 was a local act providing for a school system and the erection of schoolhouses in a municipality.

(*a*) This attack was on the act of 1907 as a whole, not on some particular provision of it.

2. The act of 1907, providing for the issuing of a certain amount of bonds by the Town of Thomson, after being authorized by an election held for the purpose, their denomination, the minimum price at which they might be sold, the use to be made of the proceeds, and containing other like provisions, was not unconstitutional as being in conflict with the act of

1879 (Political Code, § 377 et seq.), providing the method of holding an election by any county, municipality, or division desiring to incur a bonded indebtedness, except in the provision of the act of 1907 that the bonds should be authorized if two thirds of the qualified voters of the town "voting at said election" should vote in favor of such bond issue. Two thirds of the voters qualified to vote at such election, not merely two thirds of those voting, were necessary.

(a) The statement in the act of 1907, that notice of the election should be published in the official gazette of the county, must be construed in connection with the general law as to what such a notice must contain.

3. Although the act of 1907, as to the bond election in the Town of Thomson, provided that if two thirds of the qualified voters of the town voting at the election should favor the issuance of bonds it should be authorized, and although this was an invalid provision, yet where, in the proceedings had to validate the bonds, it was alleged that in fact more than two thirds of the qualified voters of the town tested by the last general municipal election, as provided in the Political Code, § 380 (there being no registration law in force in the town), had voted in favor of the bonds; and where a judgment of validation was rendered, the issuance of the bonds will not afterward be enjoined, at the instance of a citizen and taxpayer of the town, on the ground of such provision in the local law, there being nothing to show why the objecting citizen did not raise this question in the validation proceedings, or that the election was affected by the invalid clause of the act of 1907.

4. The act of 1897 (Acts 1897, p. 82), touching the validation of bonds, provides that, on due application, the judge shall require the proper officers to show cause, "at such time and place   .    .   as the judge of said court may direct, why said bonds should not be confirmed and validated." Accordingly where the judge fixed the place of the hearing in another county of the judicial circuit than that where the election was held, this was not beyond the terms of the act.

(a) The only question raised in regard to the place of the hearing of the validation proceedings was as to the construction of the act of 1897.

5. Objection raised by a citizen of the town as to the regularity of the notice of the calling of the election came too late after the judgment of validation.

(a) A notice of the time and place of the hearing having been published in a newspaper by the clerk of the superior court of the county where the municipality was situated, the bonds of which were being validated, on application for an injunction to restrain the issuance of the bonds the judgment of validation will not be held void, and the injunction granted, on an objection contending that the clerk of another county where the order nisi was made returnable should have published the notice.

6. That the municipality holding the election notified the solicitor-general of the circuit, who proceeded as pointed out in the act of 1897, and the municipality was made a party defendant, and it alone answered and did not contest the proceedings, will not suffice to make the judgment of validation void as being on its face collusive, no fraud in fact being alleged, nor any reason why the complaining citizen did not avail him-

self of the privilege conferred by the act to become a party and contest the proceeding prior to the judgment of validation.

Argued June 15,—Decided July 20, 1909.

Petition for injunction. Before Judge Hammond. McDuffie superior court. April 10, 1909.

On August 17, 1907, an act was approved which was entitled, "An act to authorize the establishment of a system of public schools in the Town of Thomson; to provide for the maintenance and support of same; to create a board of education for said town; to provide for the issuance of bonds by said town, for the purpose of purchasing school property and building schoolhouses for said town, and for other purposes." An election was held in the town to determine the question of issuing bonds for the purpose of purchasing school property and building schoolhouses, and resulted in favor of their issuance. A proceeding was instituted under the act of 1907 (Acts 1907, p. 82) to validate the bonds. It resulted in a judgment of validation. An equitable petition was then filed by Farmer, as a citizen, property owner, and taxpayer of the Town of Thomson, to enjoin the issuance of the bonds. By his petition he set up the following grounds for injunction. (1) At the time of the passage of the act of 1907 there was of force in the State of Georgia a general act to provide for the creation and operation of local-tax district schools, and for the levy and collection of local tax by districts or counties for educational purposes, and for laying off counties into school districts. (Acts 1906, p. 61.) The local act authorizing the establishment of a public-school system in the Town of Thomson is a special law covering matters for which provision has been made by this general law, and is therefore unconstitutional. (2) The act of 1907 undertook to provide a method for the levying and collection of a tax for school purposes in a manner different from that provided by the act of 1906, and is therefore unconstitutional. (3) The act of 1907 undertook to confer upon the Mayor and Council of the Town of Thomson the power to issue bonds. There was at the time of its passage, and still is, of force a general law providing the method by which a municipality should exercise the power to issue municipal bonds, embodied in the Political Code, §§377, 378, 379, 380; and therefore the portion of the act of 1907 prescribing the course to be pursued by the Mayor and Council of the Town of Thomson as a preliminary to issuing

bonds for the purposes in said act set out is unconstitutional and void, "in that it is a specific law in a case for which provision has been made by an existing general law, and is specifically unconstitutional in that the only notice it prescribes that shall be given of the holding of an election as preliminary to issuing such bonds is that there shall be a notice of the election for thirty days, without specifying the contents of the notice, and is to that extent at variance with the general law on that subject as set out in the Political Code of 1895, § 377. (4) The notice issued by the mayor and council of the holding of the election did not state what interest the bonds to be issued should bear, how much principal and how much interest should be paid annually, and when the bonds were to be paid off, thus failing to comply with the general law as embodied in section 377, supra. (5) While in the election held to determine the question of issuing the bonds it appears that 155 votes were cast in favor thereof and 27 against it, the superintendent of the election and persons consolidating the vote and declaring the result declared these figures but did not in terms state that two thirds of the qualified voters had voted in favor of the bonds. By amendment it was alleged that the judgment of validation appeared on its face to be collusive in that the Mayor and Council of the Town of Thomson, who called the election and desired to issue the bonds, invited the solicitor-general to file a suit against them, they were made parties defendant, and their answer in substance affirmed the legality of the proceedings, and neither party called the attention of the court to any defect therein.

The defendant by its answer denied that there was any illegality in the election or any unconstitutionality in the act of 1907, or any collusion, and averred that the proceedings were legal and regular, that the bonds had been validated according to law, and that the plaintiff, who did not make himself a party or urge his objections in that proceeding as provided by law, was precluded from doing so afterwards. A copy of the validation proceedings was attached to the answer. The defendant demurred to the petition, and the plaintiff demurred to the answer. The application for interlocutory injunction was heard on the pleadings, without further evidence. The injunction was denied, and the plaintiff excepted.

*Bryan Cumming*, for plaintiff.

*John T. West* and *Ira E. Farmer*, for defendant.

7

LUMPKIN, J. (After stating the foregoing facts.)

1. The act of August 21, 1906 (Acts 1906 p. 61), was an amendment to the act of 1905 in relation to the laying out of counties into school districts, and providing for the levying and collection of a local tax by districts or counties for educational purposes. The object of the amendment being stated in the caption of the act to be "to provide for amending the caption, to provide a proper enforcement of the bill and for the laying off of counties into districts of reasonable size, for the election of district trustees, whether local tax is levied and collected or not, to provide a correct method of assessing and collecting the taxes in local districts, and for other purposes." This act did not, either by its terms or by intendment, destroy municipal school systems or seek to prevent the legislature from incorporating new towns or cities, or conferring upon them powers, touching municipal schools, not in conflict with the constitution. On the contrary, in section three of the amended act it was provided that an incorporated town, located in a county where an election should be held and operating a public-school system at the time of the passage of the act, should not be included in the election without the consent of the municipal authorities, but with such consent the municipality might, under special act of the legislature, abolish its school system and avail itself of the provisions of the act of 1906, thus recognizing the municipal system until abolished. The constitution (art. 8, sec. 4, Civil Code of 1895, § 5909) declares that authority may be granted to municipal corporations, upon recommendation of the corporate authority, to establish and maintain public schools in their respective limits, by local taxation; but no such local laws shall take effect until the same shall have been submitted to a vote of the qualified voters and approved by a two-thirds vote of persons qualified to vote at such election. The act of 1906 dealt with the subject of school districts. It contained no general provision covering the subject of the erection by municipal corporations of schoolhouses or of the establishment of a local system of education in a municipality in the manner above indicated. There is therefore no merit in the contention that the act of 1907 (Acts 1907, p. 944), as to the Town of Thomson, was a special act in regard to matters covered by the general act of 1905 as amended in 1906. This attack is on the act as a whole, not on any particular provision of it.

2.　The petition of the plaintiff and his demurrer to the defendant's answer assert that there was a lack of initial authority on the part of the Town of Thomson to hold an election and issue bonds.　The real contention, however, appears to be that there was an excess of initial authority of a somewhat inharmonious character, rather than that there was a total absence of it.　The act of October 14, 1879 (Acts 1878-79 p. 40), is codified in sections 377 et seq. of the Civil Code of 1895, and provides the method of holding an election by any county, municipality, or division desiring to incur a bonded indebtedness.　While section 379 states that, when the notice has been given and an election held in the prescribed manner, if the requisite two thirds of the voters shall vote for bonds, then the authority is given to the proper officers, this was not intended to operate as a repeal of all provisions in municipal charters limiting issues of bonds and prescribing the purposes for which they may be used.　Nor did it prevent the legislature from changing municipal powers or restricting them, or prescribing the purposes for which bonds might be issued by a given municipality, or the extent of the issue for any particular purpose.　Municipal corporations are creations of the law.　The legislature may modify or limit the corporate power or amend the charter, or withdraw it altogether, provided only that in doing so it does not conflict with any constitutional provision.　It is not to be supposed that, in providing the general manner in which elections should be held in order to confer authority upon the proper officers to issue bonds, it was intended to confer an absolute power to issue bonds to the constitutional limit upon municipal officers by a general law of such an invariable character that the legislature would have no power to enact an amendment to a municipal charter prescribing the amount of bonds which might be issued by it for any given purpose.　The act of 1879 must be viewed in connection with the charter of the municipality and acts amending it or affecting it.　The legislature, for instance, can create a municipal corporation with large powers or restricted powers.　It may declare that such municipality shall have power to erect and maintain waterworks, lighting plants, or the like; or it may withhold such power.　The constitution does not require that the legislature shall authorize every municipality to establish a school system, but confers power on the legislature to do so.　That body, in its discretion,

may authorize one municipality to establish such a system, and withhold the authority from another, on account of its size, financial condition, or other sufficient reasons. If the legislature should deny to a given city, created by it by special act, authority to construct waterworks or a lighting plant, or to incur a debt for that purpose, the municipal officers could not confer upon themselves such power. There is, therefore, no necessary conflict between the act of 1879 (Pol. Code, §377 et seq.) and a special act which fixes the amount of bonds which the municipality may issue for given purposes, the manner in which they shall be used, and the price at which they shall be sold, and makes other like provisions. A comparison of this act with the manner of holding elections for the issuance of bonds contained in the Political Code will show that there is nothing in it which is in conflict with the general law, save in the provision that only two thirds of the qualified voters of the town "voting at said election" for bonds shall be necessary. This feature will be dealt with presently. Each of the acts under consideration requires a publication of notice of the election. The general law declares that this notice must specify certain things. The act of 1907 does not state in terms what the notice must specify. But it ought to be considered in the light of the general law, as requiring the same character of notice there mentioned. The general law does not state what shall be the form of the ballot. The act of 1907 does so, but there is no conflict in this. The general law declares that the election shall be held by the same persons, in the same manner, and under the same rules and regulations that elections for officers of the municipality are held, and states how the consolidation of the returns shall be made. The act of 1907 declares that "Said election shall be governed by the same rules and regulations as regular elections for mayor and council, and the qualifications of voters shall be the same." If this act had repeated verbatim the provisions of the general law on the subject, it would not have rendered the election void by being said twice instead of once. It is a special law which conflicts with a general existing law which is obnoxious, not one in harmony with the general law and prescribing certain additional matters in regard to a municipal election not in conflict with the general law. If it be conceded that, under the usual general welfare clause contained in a municipal charter, in the absence of other limitations, the authorities could

do those things which such powers ordinarily cover in respect to municipal government, and that they might increase indebtedness in the manner and under the limitations of the general law for such purposes, they would be limited by the scope of such power and purposes. If the legislature saw fit to restrict their powers, or make provisions in respect to the local municipal government, not inconsistent with the general law, there is nothing unconstitutional in doing so. *Grace v. Mayor etc. of Hawkinsville,* 101 *Ga.* 553 (28 S. E. 1021). In connection with the decision in *Mayor etc. of Cartersville v. Baker,* 73 *Ga.* 686, and the cases there cited, see *Mayor etc. of Chipley v. Layfield,* 120 *Ga.* 33, 35 (47 S. E. 539).

3. Does the fact that the act of 1907 declared that, if two thirds of the qualified voters voting in the election should favor the issuing of bonds, they should be issued, render the bonds void, under the facts disclosed by the record? It appears from the proceedings to validate the bonds, that it was not only set up in the answer of the defendant that at the election 182 ballots were cast, of which 155 were in favor of the issuance of bonds and 27 against it, but it was also alleged that "there is no law or ordinance requiring the "restriction" of voters in the Town of Thomson, and that in the last general election held in said Town of Thomson, for the mayor and council of said town, there were cast 32 ballots, . . which said general election was held on the 14th day of January 1907." The Political Code, § 380, declares that in determining the question of whether or not two thirds of the qualified voters in the municipality voted in favor of the issuance of bonds, the tally-sheets of the last general election held in such municipality shall be taken as a correct enumeration of the qualified voters, that is, as construed by this court, in the absence of a legislative provision for registration in the municipality. *Gavin v. City of Atlanta,* 86 *Ga.* 132 (12 S. E. 262). In the validation proceedings, therefore, it was thus before the judge passing upon the matter that more than two thirds of the qualified voters of Thomson had voted in favor of the issuance of bonds, tested not merely by the provision in the act of 1907, but also by that of the general law. Whether or not the holding of an election under the act of 1907, containing such provision, might have been enjoined, or whatever objection might have been made in the validation proceedings, it has been adjudicated

that the requisite number of votes, tested by the standard fixed by the general law, were cast in favor of the bonds, and that the election did not depend upon the illegal provision of the local act. Nor is there any suggestion that it did in any way affect the number of votes cast, or the manner in which they were cast. Apparently a much larger vote was polled than at the last general municipal election. If the bonds were validated in the manner prescribed by law, we do not think that their issuance should now be enjoined on this ground. The election was authorized by law and was adjudged to have been lawfully held, and the reference to the authorization of it by the act of 1907 alone did not render the judgment of validation nugatory.

4. It was set up by the demurrer to the defendant's answer that the judgment of validation was null and void, because it was granted out of the county of McDuffie, in which Thomson is situated, and at chambers in Richmond county, another county in the same judicial circuit, and that this was not authorized by the act of 1897. The sole question made was on the construction of the act of 1897 (Acts 1897, p. 82), in regard to the validation of bonds, and whether under the terms of that act the presiding judge was required to hear the validation proceedings in the county where the bonds were to be issued, and was prohibited from sitting in another county in the same judicial circuit. In the second section of the act of 1907, provision was made for the institution by the solicitor-general of proceedings to validate the bonds proposed to be issued. It was declared that he should "obtain from the judge of said court an order requiring said county, municipality, or division, by its proper officers, to show cause at such time and place, within twenty days from the filing of said petition, as the judge of said court may direct, why said bonds should not be confirmed and validated." It will be observed that, by the terms of the act, cause was required to be shown not only at such time, but also at such place, as the judge might direct. If the act contemplated that the proceeding could only be held at the court-house of the county in which the bonds were intended to be issued, the declaration that it should be held at such place as the judge might direct would be meaningless. We think that the language of the act itself contains a provision for the setting of the place as well as the time for the hearing by the

presiding judge, and that it does not prohibit him from naming a place in his judicial circuit other than that of the election.

5. It was also contended that the judgment of validation was void, because it appeared from the face of the proceedings that the notice calling the election was deficient in failing to contain sufficient specification as to the interest which the bonds should bear, and how much principal and interest should be paid annually, and when the bonds should be paid in full; and because the record of the validation proceedings showed that the declaration of the result of the election did not state in terms that two thirds of the qualified voters had voted in favor of issuing such bonds. What has been said above covers the latter contention. Matters of this character are concluded by the judgment of validation, as to the municipality and its citizens, of whom the plaintiff was one. *Lippitt* v. *City of Albany,* 131 *Ga.* 629, 636 (63 S. E. 33), and cases cited.

6. Finally it was contended that the judgment of validation was on its face collusive, because it showed that the election was called by the mayor and council of the town, the result was declared by them, the petition for validation was brought against them, they answered it, and no other person appeared, answered, or defended. As the municipality intended to issue the bonds, it was a proper party to a proceeding to validate them in advance of their issuance. The act provided for the proceeding to be instituted by the solicitor-general of the circuit, or, in his absence, by the attorney-general of the State, in the name of the State. Citizens of the town could be made parties and object to the judgment of validation, if they had ground for so doing. If they did not do so, after due notice, they could not complain that the hearing proceeded without them. There is nothing to indicate actual fraud or wrong-doing, and the mere fact that the parties provided by law as necessary proceeded in the manner pointed out in the act did not render the judgment subject to attack as being collusive on its face.

The presiding judge did not err in refusing the injunction for any of the reasons advanced by the plaintiff.

*Judgment affirmed. All the Justices concur.*