### 2575. MASSEY *r.* CITY OF COLUMBUS.

### 2576. PHELTS *r.* CITY OF COLUMBUS.

1. The power to require truck farmers, selling their products at wholesale, to pay market fees during market hours is included in the powers conferred by the charter of the City of Columbus, and the same is true as to the right of the city to require market fees of retail dealers on such articles as are usually sold at a market house. The municipal ordinances providing for the exercise of these powers are reasonable regulations. It was clearly the intention of the legislature in the charter granted the City of Columbus to allow that city to maintain a city market under such proper regulations as would make it a successful municipal enterprise, at once a source of public revenue and a means by which public inspection of such merchandise would be possible, and a healthful competition promoted.

2. The evidence authorized the conviction of the defendants in the recorder's court, and there was no error in overruling the certiorari.

DECIDED FEBRUARY 22, 1911.

Certiorari: from Muscogee superior court—Judge Gilbert. March 11, 1910.

*J. L. Willis, Hatcher & Hatcher,* for plaintiff in error.

*T. T. Miller,* contra.

RUSSELL, J. As these two writs of error present practically the same question for consideration, they will be considered together. The question to be determined is the scope of the power of the City of Columbus, as a municipal corporation, to demand market fees of the plaintiffs in error, who, as farmers, were engaged in selling their products within that city and upon its streets. Phelts sold a one-horse wagon load of watermelons as a whole on the street near the market house. The market fee was demanded of him, and upon his refusal to pay it he was fined by the recorder. Massey had a one-horse wagon load of watermelons to sell. In driving them to the market house he stopped on the street and sold at retail one melon. He likewise refused to pay the license fee demanded of him in accordance with the market regulations, and was fined.

Both Phelts and Massey sued out writs of certiorari, which, upon review, were overruled by his honor Judge Gilbert.

Section 20 of the market ordinance of the City of Columbus is as follows: "Truck farmers selling at wholesale only shall be permitted to sell their products at any time, provided the market fees specified in this ordinance are paid." Section 18 of this ordinance requires that "persons not renting stalls and selling at the market house, or in any part of the city, . . vegetables, fruits, melons," etc., "during the market hours, shall pay . . on one-horse wagons fifteen cents per day." Other regulations in the city ordinances prescribe that the market house shall be open at 4 o'clock each day except Sunday, and be closed at 10 a. m. except on Saturdays, and that no person shall within these hours sell or offer for sale upon any of the streets of the city any article of produce or provisions usually sold at the market house. Certain exceptions are made in favor of renters of stalls at the market house who have paid the market fees at the market house; but these are not material, because there is no contention that either Phelts or Massey had rented a stall at the market house, or had paid any market fees, or that the sales in question were made north of Sixteenth street. So far as the market ordinances refer to Phelts and Massey, each sold his produce in violation of the ordinances, because each sold on the street before 10 o'clock a. m., and neither had paid any market fees.

Some question is raised as to whether the watermelon is a fruit or a vegetable. We think that it is both. Generically it is included within the genus vegetable, and still it is a species of fruit. But it is immaterial how this, the most luscious product of the Southern field, which is a joy to the Northern millionaire and at the same time affords full and serene satisfaction to "Uncle Sambo" and his brood of pickaninnies, a crop which not only draws a stream of gold from outside markets, but tickles the palates of all who eat it as nothing else can, is denominated. We say it matters not how the watermelon is classified, whether as a fruit or as a vegetable, for it is certainly included within the terms of the ordinances of Columbus, as a product or thing which, in its season at least, is usually kept at a market house. The only question presented, then, is whether the City of Columbus had the right under its charter to pass the ordinances for a violation of

which the defendants in the recorder's court were convicted, and properly convicted if the ordinance is valid.

Of course, the scope within which a municipal legislature can operate is limited to the powers conferred either expressly or impliedly by the General Assembly in the grant of its charter. It seems to have been the purpose of the General Assembly by various express grants, and the confirmation of these grants in section 31 of an act approved November 29, 1890, amending the charter of the City of Columbus (Acts 1890-91, vol. 2, p. 522), to empower that city to maintain a city market under any proper regulations necessary to make it a successful municipal enterprise. The different acts of the legislature indicate that perhaps it was found that the first enactment upon the subject was not sufficiently broad to accomplish the object, and so the matter was again taken up by the General Assembly with a view of enabling the City of Columbus to make its market at once a source of public revenue and a means by which the public inspection of meats, vegetables, and such other articles as are usually kept at markets could be made possible by centralizing such sales at one or more designated places in the city. It can readily be seen, also, that one effect of this regulation would be to promote a competition in such products, which would be beneficial to the public. By section 31 of the act of 1890, supra, it is provided that "all acts of the General Assembly heretofore passed conferring any powers on the mayor and council of the City of Columbus, other than those contained in this act, are not repealed as to such grant of powers, but the same shall be extended to the mayor and aldermen of said city, but all limitations and restrictions of powers contained in said acts which are at variance with the terms of this act are hereby expressly repealed, and all laws and parts of laws in conflict with this act are hereby repealed." As it thus appears that all the powers previously granted were continued, while any limitations in previous acts which were in conflict with the act of 1900 were repealed, it is only necessary, in determining the question, to refer to the powers theretofore granted to the City of Columbus with regard to a public market, and determine whether, in the ordinances under which Phelts and Massey were convicted, there is anything inconsistent with or repugnant to the grant of power made by the legislature.

The act of 1865 expressly authorizes the City of Columbus to

forbid the sale of market products at any place other than the public market. Under the act approved in December, 1858. (Acts 1858, p. 128, § 3), the mayor and council of the City of Columbus are given power to establish and keep up one or more public markets in said city for the sale of poultry, eggs, butter, milk, fresh meats, and vegetables of any kind, and all other articles such as are usually vended at city public markets, and to govern the same by such regulations as the mayor and council may deem necessary, and to enforce the penalties for violation of their regulations. By an act of the General Assembly approved November 17, 1865 (Acts 1864-65, p. 28), the mayor and council of Columbus, as it appears to us, were given express power to pass the ordinances in question. Section 2 of the act of 1865 upon this subject is as follows: "In order to enable the mayor and said council to establish a public market in said city, the said mayor and council are hereby authorized and empowered to prohibit the sale by retail of such fresh meats and vegetables as are usually sold in a public market, at any other place in said city except at the market house, until after the usual market hours; and to impose such penalties upon offenders as upon other offenders against the ordinances of said city." It is true that section 3 provides that "no person shall be punished for any violation of an ordinance passed under and by virtue of the second section of this act, except such persons as shall usually bring marketable articles for sale in said city by retail at the market house," and the evidence does not show that either of these defendants was accustomed to bring products to the market. Persons coming within this class might raise this defense. It might be shown that the sale was the only one ever made by the person accused of the violation of the ordinance, or that his sales were sporadic. Neither Phelts nor Massey, however, presented any evidence upon this point, and we are not required to rule upon the effect of this exception, because neither of the defendants attempted to put himself within it. By section 31 of the act of 1890 the General Assembly expressly conferred upon the City of Columbus authority to prohibit the sale by retail of such vegetables as are usually sold in a public market at any place in the city other than the market house during such hours as it might prescribe. This clearly covers Massey's case, and also Phelts', if the sale of a one-horse wagon load of watermelons is a retail sale. But, even

if the sale by Phelts be construed to be a sale by wholesale, the general powers originally granted to the City of Columbus and confirmed by the act of 1890, supra, are ample to authorize the requirement of market fees from all persons selling vegetable products, whether wholesale or retail, and Phelts admitted he refused to pay the market fees. The ordinances which are attacked by these writs of error are reasonable regulations, imposed in accordance with express authority from the General Assembly, to enable the City of Columbus to maintain a public market, and during certain hours to concentrate the market business at the market house, and absolutely prohibit sales in other portions of the city during these hours. It is immaterial whether the defendants were truck farmers or not. The market fees required are in the nature of a business license, and not such a tax as is forbidden to be imposed by a municipality upon farm products until after three months.

The trial judge properly overruled the certioraries. To quote the language of Judge Gilbert from his very able opinion overruling the petition for certiorari: "It appears from the answer of the recorder, and indeed from the records as a whole, that both sales were made near the market house. The Supreme Court and also the Court of Appeals have held that in similar cases the word 'near' is equivalent to the word 'at.' Applying this ruling, it appears that the eighteenth section of the market ordinance of the City of Columbus, which appears as an exhibit to the answer of the recorder, is applicable. The fees demanded are entirely reasonable. It further appears that outside of the market hours any person may vend watermelons and such articles anywhere within the city limits without the payment of any fees whatever. The ordinance is not prohibitory."          *Judgment affirmed.*