27768.   TOWN OF McINTYRE *v.* BALDWIN, solicitor-general, *et al.*

27769.   SCOTT *et al.* v. TOWN OF McINTYRE *et al.*

DECIDED DECEMBER 5, 1939.   REHEARING DENIED DECEMBER 19, 1939.

*Victor Davidson,* for plaintiff in error.

*C. S. Baldwin, solicitor-general, E. F. Taylor, A. S. Boone Jr.,* contra.

Guerry, J. The cross-bill presents the question which was raised by the general demurrer, whether the Town of McIntyre, Georgia, under its charter, has the right to issue bonds for water-works. We will therefore consider the cross-bill first.

The powers which a city government may lawfully exercise must be derived from its charter or the general laws of this State. *Atlanta Railway and Power Co.* v. *Atlanta Rapid Transit Co.,* 113 *Ga.* 481 (39 S. E. 12) ; *Mayor &c. of Savannah* v. *Wilson,* 49 *Ga.* 477. This principle is too well established to need any further citations. The entire grant of powers conferred on the Town of McIntyre is included within these words: "it may be sued, plead, and be impleaded . . said mayor and council shall have authority to lay off new roads and streets, discontinue old roads or streets, cause the roads and streets to be worked by the residents of the town subject to road duty under the law in force for working roads in said State and county, and to levy such road tax as they may deem best for the interest of said town," and may make "such by-laws, rules, and regulations, or ordinances necessary for the government of said town and peace and good order thereof, and to fix license fees for the transaction of any and all business done in said town, which are not inconsistent with the laws and constitution of this State," and "shall have the right and authority and are hereby empowered to levy taxes upon all property in said town for the support of the government of said town not to exceed one per cent. of the value of said property." Ga. Laws 1910, p. 928.

The rule with respect to the grant of powers to a municipality is aptly stated in *Georgia Railway & Power Co.* v. *Railroad Commission,* 149 *Ga.* 1 (2) (98 S. E. 696, 5 A. L. R. 1), as follows: "A grant of power to a municipal corporation must be strictly construed; and such a corporation can exercise no powers except those which are expressly given, or are necessarily implied *from express grants of other powers.*" (Italics ours.) See *Lofton* v. *Collins,* 117 *Ga.* 434, 438 (43 S. E. 708, 61 L. R. A. 150) ; *Massey* v. *Columbus,* 9 *Ga. App.* 9, 11 (70 S. E. 263) ; *Walker* v. *McNelly,* 121 *Ga.* 114 (48 S. E. 718). This principle seems to be on the same basis as the tenth amendment to the Federal constitution, and where powers are not expressly granted or arise by necessary implication from the grant of other powers, they are reserved to the State. Under the charter now being considered there is certainly no express

grant of power to the Town of McIntyre allowing it to issue bonds for public improvement, such as waterworks. Is there anything in the language quoted above which is such a grant of power that it may necessarily be implied that the power to make contracts for waterworks, or incur a public debt therefor, exists? This necessary implication must be so clear and strong as to render it highly improbable that the legislature could have entertained a contrary intention. *Frank* v. *Atlanta,* 72 *Ga.* 428, 432; *Albany Bottling Co.* v. *Watson,* 103 *Ga.* 503 (30 S. E. 270), and cit. Grants of powers to a municipality are to be construed strictly, and no power passes which is not clearly comprehended within the language of the statute. *City Council of Augusta* v. *Mackey,* 113 *Ga.* 64 (38 S. E. 339); *Augusta & Summerville R. Co.* v. *Augusta,* 100 *Ga.* 701 (28 S. E. 126); *Mayor &c. of Savannah* v. *Hartridge,* 8 *Ga.* 23.

With these principles in mind we shall consider the language of the charter. There is no provision giving to the Town of McIntyre the authority to make contracts. In *Mayor &c. of Rome* v. *Cabot,* 28 *Ga.* 50, it was held that where the charter conferred upon the municipality the authority to make any contracts which it might deem necessary for the public welfare of the city, there was necessarily implied, under such a grant of power, the authority to construct waterworks for the city. See also *Adams* v. *Rome,* 59 *Ga.* 766. From the expressly granted power to make contracts in furtherance of the general welfare there was implied the necessary power to issue bonds and incur a debt for such purpose in the construction of waterworks. In *Heilbron* v. *Cuthbert,* 96 *Ga.* 312, 315 (23 S. E. 206), the charter under consideration provided that the city should have authority to "contract and be contracted with; sue and be sued; . . . and . . . do all things for the benefit of the city, and all things not in violation of the constitution and laws of this State." It was said there that "the 'general welfare clause' in this charter is very broad and liberal in its terms," and included within its expressly granted power the necessary implication that the city could do the things necessary to build waterworks. The legislature may create a municipal corporation with large powers or small powers. It may declare that such city can erect and maintain waterworks, lighting plants, and the like, or it can withhold such power. Unless the power is conferred as

stated above, it is withheld. See *Farmer* v. *Thomson,* 133 *Ga.* 94, 99 (65 S. E. 180). The creation by the legislature of a municipality does not ipso facto give to such municipality all the powers which are usually conferred in such instances. There are no inherent powers in a municipality in this State, unless such power is necessarily incident to a power expressly given by the charter, or necessarily implied therefrom. As is said in 43 C. J. 197, § 192: "Any doubt as to the proprietary powers of municipal corporations must be resolved against them; the policy of the law is to limit rather than to extend the proprietary functions of a municipal corporation." The reasonable presumption is that the State has granted in clear and unmistakable terms all it has designed to grant at all. Cooley's Const. Law (7 ed.) 271.

In the case of *Saunders* v. *Arlington,* 147 *Ga.* 581, 582 (94 S. E. 1022, Ann. Cas. 1918D, 907), the charter granted to the city used this language: "Said corporation shall have and enjoy all the rights, privileges, and powers incident to such corporations, not repugnant to the constitution of the United States, the constitution of this State . . and . . shall have full power and authority to enact and enforce all ordinances, by-laws, rules, and regulations necessary for the good government of said town and securing the health of the inhabitants and protection of property therein." The charter also provided under the general welfare clause that the town might issue bonds. The provisions of the general welfare clause were very broad and liberal in such a charter and allowed all powers incident to such corporations.

There is no such general welfare clause in the charter now under consideration. The enumeration of special powers in a municipal charter is often concluded with a clause conferring general authority to pass all ordinances which may be necessary for the promotion of the public safety and general welfare of the corporation which are not inconsistent with the constitution and general laws of the State. See *Farmer* v. *Thomson,* supra; *Grace* v. *Hawkinsville,* 101 *Ga.* 553 (28 S. E. 1021). We do not think a power which is contained in the words empowering the mayor and council to make by-laws, rules, and regulations necessary for the government of the town, peace, good order and dignity thereof, is broad enough to necessarily include the power to create a public debt by the issuance of bonds. There is no general clause giving

to the town here the authority to do all things it may deem necessary for the general welfare of said town. The charter is very meager in conferring powers, and in fact limits the taxing power to one per cent., showing that it was the purpose of the legislature to make a limited grant of powers. Under the view we take, the Town of McIntyre was without authority under its charter to issue bonds for the purpose of erecting a waterworks system, and the court therefore erred in overruling the demurrer to the petition.

Having decided that the general demurrer should have been sustained it becomes unnecessary to consider the exceptions in the main bill.

*Judgment reversed on cross-bill. Main bill dismissed. Broyles, C. J., concurs. MacIntyre, J., dissents.*

MacIntyre, J., dissenting. In *Mayor &c. of Rome v. Cabot,* supra, the court held: "Under a power conferred by the legislature upon a municipal corporation, to make all contracts in their corporate capacity, which they may deem necessary for the welfare of the city, and which do not conflict with the constitution and laws of the Federal or State governments, they have the right to make a contract for the construction of waterworks." See also, *Heilbron v. Cuthbert,* supra; *Saunders v. Arlington,* supra; *Hall v. Calhoun,* 140 *Ga.* 611 (79 S. E. 533); *Grace v. Hawkinsville,* supra; *Albany Bottling Co. v. Watson,* supra; 1 Dillon's Mun. Cor. (4th ed.) 146. Cities, towns, and counties "can exercise no powers except those which are conferred upon them by legislative action, or such as are necessary to the exercise of their corporate powers, the performance of their corporate duties, and the performance of the purposes of their association." *Albany Bottling Co. v. Watson,* supra. See also in this connection 1 Dillon's Municipal Corporations (4th ed.) 146. Under the charter in the instant case, I think the mayor and council "have the right and authority and are hereby empowered to levy taxes" for the purpose of waterworks and could issue bonds therefor. Therefore I think the judge did not err in overruling the general demurrer contesting this right.

ON MOTION FOR REHEARING.

Guerry, J. In its motion for rehearing movant contends for the first time that the demurrer should not have been sustained for the reason that the act of March 23, 1939, § 4 (Ga. Laws, 1939, pp. 177, 179), as follows: "That all proceedings, which have been

taken prior to the date this act takes effect, for the purpose of financing or aiding in the financing of any work, undertaking or project by any public body to which any loan or grant is under contract to be made by the United States of America through the Federal Emergency Administrator of Public Works for the purpose of financing or aiding in the financing of such work, undertaking or project, including all proceedings for the authorization and issuance of bonds, and for the sale, execution and delivery thereof, are hereby validated, ratified, approved and confirmed, notwithstanding any lack of power (other than constitutional) of such public body or the governing body or commission or officers thereof, to authorize and issue such bonds, or to sell, execute or deliver the same, and notwithstanding any defects or irregularities (other than constitutional) in such proceedings, and notwithstanding that such governing body may not have been elected, appointed or qualified for the offices they purported to hold," is conclusive of the question as to the right of the Town of McIntyre to issue bonds; and that if, under the charter, no such power was conferred, it was supplied by this statute, and the issuance of the bonds involved in the present proceedings was accordingly authorized.

It nowhere appears in the petition for the validating of these bonds that they were sought to be issued in furtherance of a contract made with the United States Government for assistance in making such public improvements. We decided the case on the record before us. It does appear in the record in the main bill, according to the answer filed by the Town of McIntyre to the petition for validation filed by the solicitor-general, that, in a notice for the holding of the election, it had stated that the United States Government had offered a grant of 45 per cent. of the cost of a waterworks system. In the petition there was no allegation at all in reference to Federal assistance or contracts therefor.

We adhere to our opinion heretofore rendered with the proviso that the plaintiff, if he so desires, may amend his petition before the judgment of this court is made the judgment of the court below and show, if he can, that the provisions of the act of 1939 are applicable to the proceedings for validation, which of course will open the matter again for demurrer. The judgment heretofore rendered is qualified to this extent. Nothing is decided with reference to the issues raised in the main bill of exceptions.

*Rehearing denied. Broyles, C. J., concurs.*

MacIntyre, J. I still dissent as to the original opinion, but concur in the proviso allowing the plaintiff to amend, and, if he does so, opening the proceedings for demurrer.