## CITY COUNCIL OF AUGUSTA *v.* MACKEY.

A municipal corporation which is invested with power to construct a system of waterworks for the benefit of the city beyond its corporate limits, to accomplish which it has been specifically authorized to lay mains and pipes under and across public highways, is liable to one injured by the negligent execution of the power granted.

(a) Such liability attaches not only as to the laying of pipes, but to the negligent removal of them as well.

(b) The act which it is alleged was so negligently done as to injure the plaintiff was not ultra vires, and the petition set out a cause of action.

Argued January 31, — Decided March 26, 1901.

Action for damages.    Before Judge Eve.    City court of Richmond county.    August 18, 1900.

*William H. Barrett,* for plaintiff in error.
*F. W. Capers* and *Salem Dutcher,* contra.

LITTLE, J.    Joseph Mackey instituted an action against the City Council of Augusta, to recover damages for personal injuries which he received by the falling of a horse which he was riding across a public highway in Richmond county, outside of the corporate limits of the city, and for which he alleged the city was liable to him, because of certain facts set out in his petition, a summary of which is as follows:    By an act of the General Assembly the City of Augusta was authorized to increase its water supply, by constructing waterworks beyond the corporate limits of the city, and to purchase and hold property for that purpose, and to lay water-mains beyond the limits of the city; to contract with persons or corporations for the use of water beyond the limits of the city, and to tap said mains with supply-pipes for the purpose of furnishing water, and to lay said supply-pipes under and across any of the public roads in the county; and was to be liable for all damages incurred by reason of laying the pipes in the public roads.    In the exercise of this authority the City Council of Augusta did, in the year 1898, contract with the government of the United States to supply water to certain of its military forces to be encamped outside of the limits of the city.    At that time defendant had in process of construction a system of waterworks outside of its corporate limits, which had progressed so far that one of its basins, called the clear-water basin, and a water-main leading therefrom to the city, were ready for use but not in actual use to supply the city.  ·  This water-main was laid under and along the northern side of the Wrightsboro road, and passed near the encampment.    Defendant constructed a reservoir at Turknet Springs from which it forced water through the main into the clear-water basin; then tapped the main, and laid under said road a connecting supply-pipe for the purpose of supplying the encampment with water.    In June, 1899, after the military forces had been removed, the defendant made an excavation across this road for the purpose of removing the supply-pipe, and, having done so, loosely cast the earth, which had been removed, back into the excavation so as to leave it in an unsafe and

insecure condition for travel.   In the nighttime of a particular day the plaintiff was traveling said road on horseback.   On reaching the place where this excavation had been made, the horse stepped on this earth which had been loosely thrown in, and fell, breaking the leg of petitioner, and otherwise seriously injuring him.   The horse was also severely injured; and the details of the injuries to both are fully set forth.   It is averred that defendant was grossly negligent in leaving this road in such a condition, and that the injury which petitioner received was not due to any fault or negligence on his part, nor could he have avoided the consequences of defendant's negligence by ordinary diligence, and that he had no warning or knowledge of any defect in the road; that he had presented his claim for damages to the city, which had failed and refused to settle the same.   The city demurred to this petition, on several grounds, only the two following of which will it be necessary to consider:   First, that there is no cause of action set out in the petition.   Second, that the alleged negligent act of defendant was ultra vires, and defendant is not responsible therefor.   These grounds of demurrer were overruled, and defendant excepted.

We are of the opinion that the demurrer was properly overruled. It is true that as a rule a municipal corporation can not exercise powers beyond the limits of the municipality, and equally as true that grants of power to a municipality are to be construed strictly. But, by an act of the General Assembly of Georgia (Acts 1895, p. 127), the right to exercise certain powers and privileges outside of the limits of the City of Augusta was expressly conferred upon its municipal authorities.   These powers were, " to construct, own, maintain, and operate, for the benefit of said city and its inhabitants, waterworks and water appliances to be located at any point to be selected by the Mayor and City Council of Augusta beyond its corporate limits, and for said purpose . . to lay its water-mains and supply-pipes . . on and along, under or across any of the public roads in the County of Richmond; provided, that in laying said water-mains and supply-pipes along or through any of the public roads, . . said City Council of Augusta shall comply with such reasonable regulations as may be prescribed . . by the authorities in control of the public roads in the County of Richmond, and shall hold . . said County of Richmond harmless against the claim or claims of any persons for damages incurred by reason of the lay-

ing of said mains and pipes in said . . roads." By section 4 of the act it was further provided that the City Council of Augusta should have full power to contract with any and all persons, including incorporated towns and villages, for the use of water from said mains beyond the corporate limits of Augusta; and for this purpose they were invested with authority to make necessary regulations in connection with the operating of its mains and the use of its water, etc. It was under the authority of this act that the waterworks were being constructed at the time an agreement was made to supply the camp with water. But it is claimed that the laying and arrangement of the particular pipes by which the encampment was supplied with water, and to effect which the excavation in the highway was made, was not authorized by the act, because, by its terms, the construction of a system of waterworks to supply the City of Augusta and for its benefit only was contemplated; that the supply of water to the encampment was made from a temporary pumping station at Turknet Springs, which was not intended to supply the city but was an independent construction and intended only to supply water to the soldiers, and in such construction the city was acting beyond its powers. We can not give this act such a limited construction, nor do we regard the point made by the brief, that, while the act granted the city authority to lay its pipes in the roads, no authority was given by the act to take them up after they were laid, as entitled to very serious consideration. If the act conferred authority to construct a system of waterworks, in doing which the road was to be excavated, and the pipe laid down, the right to take it up when necessary or expedient went with the power granted to lay it down; and, as will be seen from the terms of the act, while the purpose of the General Assembly was primarily to give the city council authority to increase its water supply by the construction of waterworks beyond the corporate limits of the city, for the benefit of the city, it also distinctly conferred on that body the right "to contract with any and all persons, including any incorporated town or village, for the use of water from said water-mains." After the city had, under authority of this act, entered upon the construction of a system of waterworks and had partially completed the same, it was certainly immaterial whether the water which it supplied to an incorporated town or village from its clear-water basin, primarily constructed to afford water to the city, came from Turknet

Springs or the canal, as the act designated no source of supply. Nor was it material whether outsiders were supplied before the works were sufficiently constructed to supply the city. The power given by the act was to supply both, through the system to be constructed. In contracting with the government to furnish water to its soldiers by means of an appliance which it was authorized to construct (the clear-water basin), the City of Augusta was within both the spirit and terms of the act, and can not be relieved of the responsibility which accompanied the power, under a claim that it had no authority to effect the particular construction which brought the water supply from Turknet Springs.

We think also that the petition set out a cause of action. Admitting that the municipal authorities of the city were, in taking up the pipe laid under the Wrightsboro road, acting within the scope of the powers conferred on them by statute, and that in doing so their servants so negligently performed the work as to cause an obstruction in this highway, the question arises, is the city liable for the results of such negligence? We think so. To create such liability it is "fundamentally necessary that the act done, which is injurious to others, must be *within the scope of the corporate powers*, as prescribed by charter or positive enactment . . ; in other words it must not be ultra vires in the sense that it is not *within* the power or authority of the corporation to act in reference to it under any circumstances." 2 Dillon, Mun. Cor. (4th ed.) § 968. And if the unlawful act was done "by the officers, agents, or servants of the corporation in the execution of *corporate powers*, or the performance of *corporate duties* of a ministerial nature, and was done so unskilfully as to injure others, . . the corporation is liable for the carelessness or want of skill of its officers." Ibid. See also cases cited in note 1, p. 1187, vol. 2, Ibid. In the case of the *City Council of Augusta* v. *Owens,* 111 *Ga.* 464, where it appeared that the city was operating a quarry outside of its limits under authority of an act of the General Assembly, and one of the operatives was injured by the negligent act of the superintendent in charge of the employees, it was ruled that, the right to quarry stone having been given by an act of the legislature, the act was not ultra vires, and the city was liable for a negligent act of its superintendent engaged in that business. See also *City Council of Augusta* v. *Lombard,* 101 *Ga.* 729, and same case reported

in the 99 *Ga.* 282.　So then it seems that the city would be liable for the negligent act of its servant in obstructing the highway, in the same manner and to the same extent that a private person would be, the rule governing which is stated by Judge Lumpkin in the case of *Branan* v. *May*, 17 *Ga.* 138, thus: "It is laid down in Serj. Carthew, who reported, in the reign of King James, that if a man lay logs of wood across a highway, though a person may, with care, ride safely by, yet, if by means thereof my horse stumble and fling me, I may bring an action." If it be claimed that the provision of the act which authorized the construction of waterworks limits the liability of the city to holding the County of Richmond harmless against the claim of any person for damages incurred by reason of laying the mains and pipes under the public roads, the reply is that the provision referred to was enacted for the benefit of the county, which has the direct control of the roads, and was alone for its protection. As we have endeavored to show, the city in such construction is directly liable to a person injured, because of the negligent act of its servant; and a provision in the law, perhaps inserted from overcaution in seeking to protect the county from the consequences of the city's negligence, can not be construed as a limitation of its direct liability to a person injured, which is imposed by the common law. The demurrer was properly overruled. *Judgment affirmed. All the Justices concurring.*