IRWIN *et al. v.* TORBERT; *et vice versa.*

GEELE *et al. v.* TORBERT; *et vice versa.*

112

Nos. 16076, 16097, 16100, 16101.   June 11, 1948.
Rehearing denied July 16, 1948.

Grant, Wiggins, Grizzard & Smith, William G. Grant, Lokey & Bowden, and James F. Cox, for Irwin et al.

*Carl B. Copeland, Smith, Partridge, Field & Doren₁ ₁s, Mac-Dougald, Troutman, Sams & Branch, Arnold, Gambrell & Arnold, Herbert Johnson, Joseph F. Haas, Calhoun & Calhoun, Heyman, Howell & Heyman, Clifford Walker, J. C. Savage, Ralph H. Pharr,* and *F. L. Eyles,* for persons at interest.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, E. D. Smith Jr.,* and *Hoke Smith,* for Geele *et al.*

*Moise, Post & Gardner,* for Torbert.

*Moise, Post & Gardner, James E. Morrisette, McQueen & McQueen, Sapp & Ewing, J. N. Peacock Jr., William C. McLean, Leonard Farkas, Walter H. Burt, L. P. Goodrich, Wright & McGuire, Reuben Wright, Sam Brown Lippitt, Reginald McDuffee, Newell Edenfield, Powell, Goldstein, Frazer & Murphy, Alfredda Wilkerson, Andrew A. Smith,* and *Henry A. Stewart,* for persons at interest.

ATKINSON, Justice. (After stating the foregoing facts.) █ Four ordinances of the City of Atlanta, a violation of which was alleged as negligence per se, were as follows: (1) Ordinance of 1908, (2) Building Code of 1924, (3) Ordinance of 1938, and (4) § 51-117 of the Code of the City of Atlanta.

(*a*) The Ordinance of 1908 is contained in the third paragraph of the eighth amendment. The Building Code of 1924 is set forth in the second paragraph of the third amendment and the third paragraph of the eighth amendment. By section 326 of this Building Code, as contained in the eighth amendment, it is provided that "any and all other ordinances . . affecting or relating to the construction, alteration or removal of buildings or other structures . . are hereby repealed." Accordingly, the Ordinance of 1908, which related to the construction of buildings, was repealed. By the terms of the Building Code of 1924, as set forth in the first paragraph of the eighth amendment, it is provided that, "Unless existing buildings or structures are specifically mentioned, the provisions of this Code shall apply only to buildings or structures hereafter erected." The allegations of the petition show that the Winecoff Hotel was built about 1912. Therefore, a violation of either the Ordinance of 1908 or the Building Code of 1924 would not constitute negligence per se, and the trial judge erred in overruling demurrers thereto.

(*b*) The Ordinance of 1938, as contained in paragraph four

of the third amendment, and § 51-117 of the City Code, as set forth in paragraph one of the seventh amendment, contain identical provisions. Each in part provides: "Buildings over two stories in height, except buildings of fire-resistive construction, as defined in the Building Code of the City of Atlanta, occupied by 10 or more persons above the second story, or 25 or more persons on the second floor, shall have all stairways, elevators, light shafts and other vertical openings protected and enclosed with wired glass in metal, or with heavy wooden frames, or with partitions having one hour fire resistance; or such buildings shall be equipped throughout with automatic sprinkler systems; or they shall be equipped throughout with automatic alarm systems; or they shall be provided with manual alarm systems, if in the opinion of the Board of Examiners created by section 314 of the Building Code such system is suitable in connection with a watchman or others on duty during the occupancy of any such building, to assure the quick transmission of an alarm of fire; or they shall have such combination of the above items as, in the opinion of the Board of Examiners, to assure safe occupancy of the building. Also, such buildings shall conform to the provisions of Part IX of the Building Code of the City of Atlanta."

Numerous grounds of demurrer thereto were interposed and overruled. It is here insisted that the court erred in that: 1. Each is ultra vires as being beyond the charter powers of the city. 2. Each is a special ordinance for which provision has been made by general law, and is in violation of article I, section IV, paragraph I, of the Georgia Constitution. 3. Each constitutes an unlawful delegation of the legislative power of the city, which under the charter is vested in "the mayor, board of aldermen, and board of councilmen." 4. Each is too vague and indefinite to constitute a valid municipal ordinance.

█ █ As to the question of the ordinance being ultra vires, we look to certain provisions of the charter. Both the charter granted by the act of 1874 (Ga. L. 1874, p. 116), and the act of 1913 (Ga. L. 1913, p. 507) provide the inhabitants "with power to govern themselves by such ordinances, resolutions and bylaws, for municipal purposes, as they may deem proper, not in conflict with this charter, nor the Constitution and laws of this State." And each further provides: "The said Mayor and General Coun-

116

cil shall have full power and authority to pass all bylaws and ordinances respecting public buildings and grounds, work houses, public houses, . . and every other bylaw, regulation and ordinance that may seem to them proper for the security, for the peace, health, order and good government of said city." Also, by the act of 1889 (Ga. L. 1888-1889, Vol. II, p. 811) and the act of 1913 (Ga. L. 1913, pp. 507, 521), the following is provided: "That the Mayor and General Council . . are hereby authorized and empowered . . to require of the owner, agent, lessee or tenant in possession of any building . . to place thereon fire escapes of such character and material as may be . . deemed requisite [it then provides for notice and penalty]. Said Mayor and General Council shall have power to prescribe by ordinance for the regulation of the placing of fire escapes on buildings in said city, requiring the same, as to notice, time within which to place the same after notice and otherwise." Also, by the act of 1874 (Ga. L. 1874, pp. 116, 148) and the act of 1913 (Ga. L. 1913, pp. 507, 591), "The said Mayor and General Council shall have power and authority to continue the fire limits, as now established by law, . . within which fire limits . . it shall not be lawful for any one to erect other than fire-proof buildings; . . and should any one erect . . within such fire limits, so established, any such building, . . said Mayor and General Council . . shall cause the same to be removed; . . and the said Mayor and General Council shall have power to determine what buildings or other structures are or are not fire-proof."

A grant of power to a municipal corporation must be strictly construed. It can exercise no power except those expressly given or necessarily implied from express grants of other powers, and no power passes which is not clearly comprehended within the language of the statute. *Augusta & Summerville R. Co.* v. *Augusta*, 100 *Ga.* 701 (28 S. E. 126); *City Council of Augusta* v. *Mackey*, 113 *Ga.* 64 (38 S. E. 339); *Lofton* v. *Collins*, 117 *Ga.* 434 (43 S. E. 708, 61 L. R. A. 150); *Walker* v. *McNelly*, 121 *Ga.* 114 (48 S. E. 718); *Georgia Railway & Power Co.* v. *Railroad Commission*, 149 *Ga.* 1 (98 S. E. 696, 5 A. L. R. 1); *Town of McIntyre* v. *Baldwin*, 61 *Ga. App.* 489 (6 S. E. 2d, 372).

Applying this rule to the ordinance of 1938 (City Code, § 51-117), which is here questioned, we hold that ample authority

therefor is contained in the charter. As above stated, the charter vests the Mayor and Council with "power to govern themselves by such ordinances, resolutions and bylaws, for municipal purposes, as they may deem proper, not in conflict with this charter, nor the Constitution and laws of this State." They are then specifically given the authority "to pass all bylaws and ordinances respecting public buildings and grounds, work houses, public houses, . . proper for the security, for the peace, health, order and good government of said city." In so construing this ordinance and City Code section, consideration is also given to the thought that regulations for the construction of buildings, with a view of preventing fires and conflagrations within municipalities, are within the scope of the general powers of a municipal corporation, unless forbidden by the charter. Such has been held as to the building of a schoolhouse. See *Mayor of Cartersville* v. *Baker*, 73 *Ga.* 686. To be able to prevent the construction or maintenance of fire hazards is as much within the scope of the general powers of a municipality as the building of a schoolhouse. The "protection to person and property is the paramount duty of government." Constitution article I, section I, paragraph II (Code, Ann., § 2-102).

It is insisted that the act of 1889 (p. 811) and the act of 1913 (p. 507), authorizing the city to require fire escapes, showed that the General Assembly construed the then existing charter powers as insufficient for this purpose without this additional authority. We see no merit in this contention, as the ordinance here under attack was an ordinance of 1938. Nor does the fact that the charter of 1874 makes provision for the actual removal of a non-fire-proof building within the "fire limits" of the city negative the authority to provide building regulations within the city limits.

It is asserted that the Ordinance of 1938 and the City Code, § 51-117, are special ordinances for which provision has been made by general law, and are therefore in violation of article I, section IV, paragraph I, of the Georgia Constitution of 1877 (Code, § 2-401), which in part provides: · "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." The general law invoked is the act of 1889 (Ga. L. 1888-9, Vol. II, p. 168,

Code, § 54-402), the pertinent parts thereof being as follows: "Owners of every building more than two stories in height, not including the basement, used in the third or higher stories, in whole or in part, as factory or workshop, shall provide more than one way of egress from each story of said building above the second story, by stairways on the inside or outside of said building, and such.stairways shall be, as nearly as may be practicable, at opposite ends of each story and so constructed that, in case of fire, the ground can readily be reached from the third and higher stories. Stairways on the outside of said building shall have suitable railed landings at each story above the first, and shall connect with each of said stories by doors or windows opening outwardly, and such doors, windows, and landings shall be kept at all times clear of obstructions. All the main doors of such buildings, both inside and outside, shall open outwardly, and each story shall be amply supplied with means for extinguishing fires." Code § 54-403 provides for examination of buildings. Then § 54-404 provides: "The municipal authorities of any town or city may, by ordinance, provide that the provisions of this Chapter shall apply to all buildings within their limits not used as private residences, three or more stories in height."

It is contended that this general law exhausts the subject in so far as hazards of fire are concerned, and that a municipality can go no further than to adopt this provision as applicable to such buildings which are not used as private residences.

The ordinance in question provides that certain described buildings shall have "all stairways, elevators, light shafts and other vertical openings protected and enclosed with wired glass in metal, or with heavy wooden frames, or with partitions having one hour fire resistance," or "automatic sprinkler systems," or "automatic alarm systems," or under certain conditions with "manual alarm systems," or under certain circumstances a "combination of the above items." When these requirements are applied to the provisions of the Code, § 54-402, we see no overlapping of the same requirements. The general law as set forth in this Code section requires "more than one way of egress from each story . . above the second story, by stairways on the inside or outside . . at opposite ends of each story . . so . . in case of fire, the ground can readily be reached from the

third or higher stories." It then makes certain requirements for the construction and maintenance of the outside stairways and main doors of the building, and requires that "each shall be amply supplied with means for extinguishing fires."

We can see no specific requirement in the terms of the city ordinance for which provision has already been made by the general law contained in the Code, § 54-402. Nor can we denominate them as being on the same general subject. The general law is designed for the protection of the lives of occupants of a building after a fire occurs therein. The city ordinance, by requiring the building to contain described material and equipment, has for its purpose the prevention of fire, or the spread of fire, therein. *City of Atlanta* v. *Hudgins*, 193 *Ga.* 618 (19 S. E. 2d, 508), is not controlling here.

· In reaching this conclusion no implication or intimation is intended as to whether the constitutional provision invoked, article 1, section 4, paragraph 1 (Code, Ann., § 2-401), would apply at all to municipal ordinances as distinguished from enactments of the General Assembly, no ruling or expression upon such question being necessary in the view that we have taken upon other questions as just indicated.

██ The ordinance of 1938 (City Code, § 51-117) is further attacked as being an unlawful delegation of the legislative powers of the city. In addition to the part of the ordinance above quoted under division (b) of this opinion, it also, by section (d) (set forth in the seventh amendment), provides as follows: "It shall be the duty of the Board of Examiners created by section 314 of the Building Code of the City of Atlanta to prepare and issue in printed form suitable regulations and rules covering the construction and functioning of alarm systems and automatic extinguishing devices and to issue the necessary details as to the minimum protection to vertical openings in buildings to make them reasonably fire safe. Such standards, rules and requirements shall not exceed or be inconsistent with those promulgated by the National Bureau of Standards, the American Standards Association, Underwriters Laboratories Inc., and the National Board of Fire Underwriters."

It is contended that this section delegates the city's legislative power to the Board of Examiners, and, or, adopts rules and stand-

ards as promulgated by other organizations. We can not concur in this view. This section merely defines a duty and puts a burden on the Board of Examiners. It in no way makes any provision to govern the conduct or place any duty upon the owner of the building.

■ ■ The Ordinance of 1938 and the City Code, § 51-117, are also attacked as being too vague and indefinite to constitute a valid municipal ordinance. We hold that this criticism is not justified.

■ Other grounds of demurrer were interposed to the Ordinance of 1938 and the City Code, § 51-117. Paragraph 3 of the first demurrer, 9 (a) of the second demurrer, and paragraph 1 (a) of the third demurrer are similar, and each is directed to the incompleteness of the above ordinances as set forth. The demurrers attack the ordinance on the grounds, that, as pleaded, each ordinance shows that Part IX of the Building Code of the City of Atlanta is a component and necessary part of the ordinances alleged (each alleging that the buildings there referred to "shall conform to the provisions of Part IX of the Building Code of the City of Atlanta"), and nowhere in the petition as amended is a copy of Part IX of the Building Code set out or attached as an exhibit, and that these ordinances convey no meaning and can not be properly construed unless said Part IX of the Building Code is read in connection therewith.

While in paragraph 2 and paragraph 6 of the third amendment, and in paragraph 1 of the eighth amendment, certain apparently disconnected and isolated sections of the Building Code are set forth, yet nowhere therein is there anything to identify any of said provisions as being all or any part of Part IX of the Building Code.

The defendants are entitled to have the provisions of § 51-117 of the Code of the City of Atlanta, and the Ordinance of 1938, considered in connection with Part IX of the Building Code of the City of Atlanta, which is made a component part of each; and neither the petition nor either amendment having set forth the terms thereof, the court erred in overruling these grounds of demurrer. A court can not take judicial cognizance of municipal ordinances, and where relied on to show rights, they should be set out in the pleadings. *Funk* v. *Browne*, 145 *Ga.* 828 (2) (90 S. E. 64); *McDonald* v. *Lane*, 80 *Ga.* 497 (5 S. E. 628).

■ Paragraph 4 of the third demurrer attacks a portion of the Building Code set forth in paragraph 1 of the eighth amendment, which states: "Section 10 (4). Buildings of masonry, steel, or reinforced concrete construction in accordance with sections 110 to 173, shall be considered fire resistive." The attack is upon the ground that it is incomplete, in that sections 110 to 173 are component and necessary parts of that section of the Building Code, and nowhere in said petition or amendments thereto are said sections set out, or attached as exhibits, and said section can not be properly construed without sections 110 to 173 being read in connection therewith.

The defendants are entitled to have section 10 (4) considered in connection with sections 110 to 173, as they are a part thereof; and the petition as amended failing to incorporate these sections, the court erred in not sustaining this ground of demurrer. *Funk* v. *Browne*, supra; *McDonald* v. *Lane*, supra.

■ Other grounds of demurrer which were overruled require no elaboration. The allegations attacked by grounds 4, 10, 19, 20, and 21 of the first demurrer and paragraphs 1 and 15 of the second demurrer were corrected by subsequent amendments. The grounds of paragraphs 5, 6, and 15 of the first demurrer, and paragraphs 2, 8, 10, 16, and 18 of the second demurrer were covered by rulings in the first division of this opinion. Paragraphs 11, 12, 13, and 14 of the second demurrer, and paragraphs 6, 7, and 8, of the third demurrer were directed to allegations that were pertinent to equitable relief. Paragraphs 9, 13, and 14, of the first demurrer and paragraphs 2 (a) and 7 of the second demurrer were properly overruled.

■ By cross-bill of exceptions error is assigned upon every ground of demurrer sustained by the trial judge. Paragraphs 4, 5, 6, 7, 8, 15, and 16, of the first demurrer and paragraph 2 of the second demurrer were directed to allegations alleging common-law negligence.

The petition alleged that plaintiff's daughter was a guest in room 1430 of the hotel when fire broke out on the third floor at 3 a. m. on December 7, 1946, that she was killed by carbon monoxide gas caused by the fire, and that the hotel was constructed about 1912. It was further alleged that Mrs. Irwin acquired ownership in 1943, at which time she assumed obligations under

the terms of an existing lease contract extending through 1956; and that subsequently Geele, Geele, and O'Connell became tenants as assignees of the lease contract, and as such, obligated to its terms and conditions. That Geele, Geele, and O'Connell were operating a hotel in the building and Mrs. Irwin knew that the building was being so used.

After long and painstaking research and study of the amended petition, the various grounds of demurrer and the order of the trial judge thereon, it is difficult to determine the exact status of the record in so far as it pertains to common-law negligence. From the order of the trial judge, wherein rulings on the demurrers were passed upon, it is reasonably clear that he took the position that the allegations of the amended petition, in so far as they sought to allege a cause of action based on common-law negligence, should be stricken.

The allegations relating thereto in the petition as amended were in substance as follows: The defendants, both the owner and the lessees, were negligent, in that the hotel building was constructed and maintained without fire doors enclosing the elevator shaft, without a sprinkler system, without a fire-alarm system, without any fire escape whatsoever, and without any roof that would permit flames and gases to escape, and with a large amount of wood and other combustible materials throughout the hotel. It was so constructed that the elevator and steps created a suction for flames, which could and did prevent escape by the only interior stairway or the only elevator shaft which were situated together, and it was impossible for a person to escape after the fire started. The stairways were not enclosed. The room in which the petitioner's daughter was at the time of the fire was on a floor high above the part of the hotel where the fire commenced, and she could not escape because the fire, beginning at the third floor below her, made it impossible for her to go down the elevator shaft or down the stairway. The owner and the operators had highly combustible burlap and paint throughout the hotel, and this caused the fire to spread rapidly. There was only one bell boy on duty in the entire hotel and no other employee of the hotel was stationed to fight the fire and warn the occupants. Approximately ten minutes after 3 a. m. the fire started and was seen and known by certain employees whose

names are unknown to the petitioner. No alarm was turned in and no effort made to cause the petitioner's daughter and other guests to get out.

The views of the majority of the court, in which the writer and Justice Wyatt do not concur for reasons hereinafter stated, are as follows: The defendants assert the recognized principle of law to the effect that there can be no recovery for an injury which results from acts of commission or omission which violate no law. They cite in support of this very sound rule of law *Jackson v. Standard Oil Co.*, 98 *Ga.* 749 (26 S. E. 60) ; *Smith v. Clarke Hardware Co.*, 100 *Ga.* 163 (28 S. E. 73, 39 L. R. A. 607) ; *West v. Inman*, 137 *Ga.* 822 (74 S. E. 527, 39 L. R. A. (N. S.) 744, Ann. Cas. 1913B, 276), and other authorities. The entire assault upon the allegations relating to this feature of the case is predicated upon the assumption that none of the specific acts of omission or commission violates any law. Based upon this assumption, the conclusion is reached that no legal ground for recovery is shown. Since the rule of law is indisputable, it remains only to ascertain if there is in fact any law of force in this State that prohibits the alleged acts of commission or compels the alleged acts of omission. The owner here has neither the possession nor the right of possession except the right to go upon the premises for the purpose of making alterations or repairs required by the law. This limited right, as it relates to the duty to avoid acts of negligence which violate the law, is sufficient right of possession to render the owner liable for negligence in the structural condition which results in damages to others.

The owner, Mrs. Irwin, knew or by the exercise of ordinary diligence could have known the physical condition and type of structure of the hotel building at the time she purchased it. She is, therefore, charged with knowledge of the alleged structural deficiencies. She knew also that the building was, at the time of her purchase and thereafter until the fire, being used as a hotel involving the admission of a large number of persons as patrons of the lessees, and she profited by such use in the form of rentals which she received. In such circumstances she was required to exercise ordinary care for the safety of the patrons of the hotel. Restatement of the Law of Torts, par. 359; Colorado Mortgage & Investment Co. *v.* Giacomini, 55 Col. 540 (136 Pac. 1039, L. R. A.

1915B, 364); Junkermann *v.* Tilyou Realty Co., 213 N. Y. 404 (108 N. E. 190, L. R. A. 1915F, 700).

Some criticism has been made of our construction of the clause in the lease dealing with the owner's limited right of possession when this case was here previously. See *Irwin* v. *Torbert,* 202 *Ga.* 482 (supra); *Irwin* v. *Willis,* 202 *Ga.* 463 (43 S. E. 2d, 691). Whether or not that decision is the law of the case, we adhere to that construction, for the reason that we consider it sound. But we must, under the rule of law first above stated, find that there was a law violated by the alleged acts of negligence if this portion of the petition is to be upheld against the demurrer. There is such a law. The object and purpose of the Code, § 105-401, is to require the owner or occupier of the premises to exercise ordinary care in keeping the premises safe for an invitee, which the deceased was in this case. The ordinary diligence there required is defined in § 105-201. It is that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances. Indeed, this law does not specify outside fire escapes, closed stairways, sprinkler systems, or fire alarms, but it is broader than any such specific requirement and is comprehensive enough to embrace any or all of these and more if necessary to constitute the exercise of ordinary care in a given case.

The next inquiry is whether or not the alleged acts and omissions show lack of ordinary care as required by the law. The petition alleges that the defendants failed to exercise ordinary care in the manner above set out. It is sought by counsel first to have this court close its eyes to all but one of the alleged acts of negligence and the demurrers thereto and decide as a matter of law whether that specific act, standing alone, constitutes negligence under the law. The demurrers are directed to each alleged act separately, and in this way we are asked to reject one at a time all of such acts, since standing alone no one would be sufficient to constitute lack of ordinary care. Neither law nor sound reason would allow us to so dispose of these matters. It is a demonstrable fact that a combination of factors, which individually and alone would not be dangerous, might, because of the combination, constitute danger. For instance, it could not be said that the failure to have an outside fire escape for a

building would alone constitute want of ordinary care or that any one of the alleged acts or omissions would, independently of the others, amount to a lack of ordinary care. But when they are combined at the same time and place, as here, it can not be said as a matter of law that want of ordinary care is not shown. Of course, all the alleged acts or omissions, such as insufficient watchmen, failure to give an alarm, accumulation of combustible materials in the halls and corridors of the building, which were not under the control of the owner, could not be charged against the owner, but may be considered only as against the lessees.

We are asked to take judicial cognizance that a vast majority of the hotels of this country at the time of this fire did not have fire doors, sprinkler systems, alarm systems, or facilities in reference to permitting flames or gases to escape, and that at the time of this fire practically all of the hotels in the City of Atlanta were on the same or lower plane with respect to fire doors, sprinkler systems, and the like, and that the care exercised by an ordinarily prudent person under the same or similar circumstances would not be greater than that exercised by the operators of the Hotel Winecoff. In support of this request, counsel cite Minnesota *v.* Barber, 136 U. S. 321 (10 Sup. Ct. 862, 34 L. ed. 455), where it is said: "If a fact . . upon which the rights of the parties depend, is within common experience and knowledge, it is one of which the courts will take judicial notice." Courts should never take judicial cognizance. of anything that is subject to be disproved. This court can not judicially say what legal evidence upon the trial might show as to the matters here mentioned. These matters are proper for the jury to consider as circumstances bearing upon the ultimate question of negligence, if they are proved upon the trial.

The court erred in sustaining the demurrers of all the defendants as to the allegations of negligence relating to deficiencies and defects in the structure of the building. The allegations of negligence in the operation of the hotel were good against the demurrers of the lessees, but were not good against the demurrers of the owner.

As hereinbefore stated, the writer does not concur in the above views, but is of the following opinion, in which he is authorized by Justice Wyatt to state that he concurs:

An innkeeper is not an insurer of his guests' safety. *Holloman* v. *Henry Grady Hotel Co.*, 42 *Ga. App.* 347 (156 S. E. 275); *Hotel Richmond* v. *Wilkinson*, 73 *Ga. App.* 36 (35 S. E. 2d, 536). There can be no case of the negligent injury of one person by another in the absence of a legal duty to the person injured. *Smith* v. *Clarke Hardware Co.*, 100 *Ga.* 163 (supra).

It is clear, under the decision in *West* v. *Inman*, 137 *Ga.* 822 (1) (supra), that at common law the failure to provide fire escapes on the part of the owner of the building, used as alleged in the instant case, did not render the owner liable in damages for injuries incurred in consequence of such failure.

Neither is there any common-law duty on the part of the owner of a hotel building, which would restrict the construction or the maintenance of the building to any particular type of building material; or to any general plan of interior arrangement; or to any type of heat-resisting paint or other material applied to or made a part thereof. Nor would there be any common-law negligence on the part of the lessees and operators of a hotel for using the building, by reason of injury to a guest on account of the building burning, where the building was constructed in a way that it violated no common-law duty. In other words, there is no common-law duty on the part of the owner of a hotel building, or the lessee who operates a hotel business therein, to have any particular type of building; nor is there any common-law duty on the part of the lessees who operate a hotel business therein to maintain any particular service to prevent or extinguish fires within the building. Liability for injury due to a fire by reason of the construction of the building, or the absence of a service to prevent or extinguish fires, must be predicated upon a violation of some statute or ordinance.

The exact question has not been passed upon by this court, though a related question was involved in *Lester* v. *Foster*, 40 *Ga. App.* 500 (150 S. E. 433). Ample authority for the ruling above made is found in the decisions of the courts of other States.

At common law the owner of a building was not bound to anticipate the possibility of remote danger from fire, or that its occurrence would put in jeopardy the lives of its employees or tenants. Yall *v.* Snow, 201 Mo. 511 (100 S. W. 1, 10 L.R.A. (N. S.) 177, 119 Am. St. R. 781, 9 Ann. Cas. 1161). At common

law there was no duty imposed upon an owner of a building to provide any particular means of escape from a fire. Jones *v.* Granite Mills, 126 Mass. 84 (30 Am. R. 661); Arms v. Ayer, 192 Ill. 601 (61 N. E. 851, 58 L.R.A. 277, 85 Am. St. R. 357); Pauley *v.* Steam Gauge & Lantern Co., 131 N. Y. 90 (29 N. E. 999, 15 L.R.A. 194).

In Baugh *v.* McCleskey (1927, Tex. Civ. App.) 292 S. W. 950, where the fire originated underneath the stairway on the ground floor, and on account of the height of the building and the nature of its construction a strong suction must have been created and necessarily caused the flames to spread rapidly over the building, it was held that an innkeeper is not the insurer of the safety of his guests, and that in order to charge the innkeeper with liability for injuries to the person of his guest, the negligence of the innkeeper must have been in connection with the very circumstances which produced the injuries. The opinion then quotes with approval from Weeks *v.* McNulty, 101 Tenn. 495 (48 S. W. 809, 43 L.R.A. 185, 70 Am. St. R. 693), this language: "It must be shown that the negligence of the innkeeper in this case was the proximate cause of the fire and the consequent injuries." It further held that there was no rule of law requiring hotels to be constructed of any particular kind of materials. Subsequently this case was quoted with approval in Hays *v.* The Texan Inc. (1943, Texas Civil Appeals), 174 S. W. 2d, 1006, where the hotel building then under consideration was brick, though the elevator shaft from top to bottom was built of pine inflammable materials, and was so situated as to create a strong draft through the whole building, thereby causing a rapid spreading of fire on the occasion in question.

Where the courts have passed upon this question, their decisions have been predicated upon the basis that neither the use of the particular materials in the construction of a hotel building, nor the maintenance of its architectural arrangement, nor the absence of the maintenance of any service by the operators to prevent or extinguish fires, amounts to a want of ordinary care or diligence, and, therefore, such conduct does not show a violation of any duty to a person injured by reason of the burning of the hotel. The decisions also seem to hold that the proximate cause of the injury to a person on account of the building burn-

ing is the origination of the fire, and the manner of the construction of the building and the absence of service to prevent the fire from spreading do not become a proximate cause of the injury.

There are many precautions that the owner of a hotel building could take in its construction which would lessen the hazard of fire and increase the safety of its occupants; and there are various measures that the lessees and operators could install which would tend to minimize the probability of a fire and the danger to its guests should one occur. No one would doubt that such steps on the part of both would be wise precautions, but until some law-making body prescribes such expediences as a duty upon them, this court has no authority to declare their failure so to do as being negligence on their part.

■ Other grounds of demurrer which were sustained require no special elaboration. Grounds 12, 13, 14, 17, and 18 of the first demurrer were directed to allegations not germane or relevant to the relief sought. Grounds 5, 6, and 17 of the second demurrer were directed to a city ordinance relating to nuisances, and the allegations of the petition were not sufficiently specific to invoke the terms of this ordinance, even if the ordinance could be invoked in a suit of this kind, in view of the rulings in *Western and Atlantic Railroad Co.* v. *Atlanta*, 113 *Ga.* 537 (38 S. E. 996, 54 L.R.A. 294).

■ The rulings on all the demurrers, both general and special, as set forth in the bill of exceptions, were contained in one order of the trial judge. This order allowed the plaintiff in the lower court ten days to amend to meet its terms. No amendments were filed for this purpose. However, under the rulings of the lower court, the necessity for amendment, in so far as the plaintiff in the lower court was concerned, would only have applied to instances where the demurrers were sustained, and not where demurrers were overruled. Accordingly, under the rulings in divisions two and three of the opinion, where the decision of the trial judge in overruling the demurrers is reversed, the plaintiff in the lower court should have the right to amend. Direction is therefore made that the trial judge by appropriate order give the plaintiff in the lower court an opportunity to amend to meet the rulings made in divisions two and three of this opinion.

*On the main bills of exceptions in cases numbers 16076 and*

*16100, judgments affirmed in part, and reversed in part with direction. All the Justices concur, except Duckworth, P. J., Head, and Candler, JJ., who dissent in part from the rulings in the 1st, 2d, and 3d headnotes and the corresponding divisions of the opinion. Jenkins, C. J., concurs specially in the ruling in headnote 1 (b, 2) and the corresponding division of the opinion. On the cross-bills of exceptions in cases numbers 16097 and 16101, judgments affirmed in part and reversed in part. All the Justices concur, except Atkinson and Wyatt, JJ., who dissent from the ruling in the 5th headnote and the corresponding division of the opinion.*

DUCKWORTH, Presiding Justice, dissenting in part: I dissent from divisions 1, 2, and 3, of the opinion and corresponding head-notes in so far as it is held that the ordinances relied upon to show negligence are not in conflict with the general law dealing with the same subject-matter, my views being as follows:

"Whenever the legislature passes an act and applies its provisions to the entire territory of a county, inconsistent provisions in the charter of an incorporated town located within that county are repealed by necessary implication." *Glover* v. *State*, 126 *Ga.* 594 (3) (55 S. E. 592). The quoted ruling by this court is authority for the statement that, if charter provisions are inconsistent with a subsequent general law, they must yield thereto and are no longer valid. I do not think that it is necessary that the two be inconsistent in order to nullify the charter provisions that are dealt with in the general law. The Constitution, article 1, section 4, paragraph 1, outlaws special laws in those areas where there exists a general law. It is enough to prevent the existence of a valid special law if the subject-matter of that law has been dealt with even though superficially by a general law. *City of Atlanta* v. *Hudgins*, 193 *Ga.* 618 (19 S. E. 2d, 508). That which the State is prohibited from doing it can not authorize its creature, a municipality, to do. 43 C. J. 226. "It is an elementary principle of law, established by the unanimous concurrence of all relevant authorities, that a municipal ordinance must not be inconsistent with or repugnant to the Federal and State Constitutions. So far as their constitutional validity is concerned, they are considered in the same light as laws of the State and must conform to the supreme organic law in every respect." 37 Am. Jur. 767, § 156. In *Western & Atlantic R.*

*Co.,* v. *Atlanta,* 113 *Ga.* 537 (38 S. E. 996, 54 L.R.A. 294), it was said: "We apprehend that the rule is, when a general law is enacted, making certain provisions in relation to all the towns of this State, and the provisions of the enactment clearly manifest that it was the purpose of the lawmakers to establish a given condition in all of such municipalities, that the terms of such general law will supersede the rights and powers given to any particular municipality by its charter." Here is a direct and unambiguous statement of a rule of law which causes a subsequent general law to supersede the provisions of a municipal charter relating to the subject-matter of that law. If there exists in this State a general law dealing with the subject matter embraced in the municipal charter, the general law must control and the charter provision is nullified.

It remains only to determine if there is a general law in Georgia dealing with the subject-matter of the city ordinances pleaded in this case, that subject being safety measures against injury by fire. By an act approved November 11, 1889 (Ga. L. 1889, p. 168; Code, §§ 54-402 to 54-405, inclusive), it is provided that the owner of every building more than two stories in height, not including the basement, used in the third or higher stories, in whole or in part, as factory or workshop, shall provide "more than one way of egress from each story of said building above the second story, by stairways on the inside or outside of said building, and such stairways shall be, as nearly as may be practicable, at opposite ends of each story and so constructed that, in case of fire, the ground can readily be reached from the third or higher stories. Stairways on the outside of said buildings shall have suitable railed landings at each story above the first, and shall connect with each of said stories by doors or windows opening outwardly, and such doors, windows, and landings shall be kept at all times clear of obstructions. All the main doors of such buildings, both inside and outside, shall open outwardly, and each story shall be amply supplied with means of extinguishing fires." While it will be noted that the quoted portion of the act applies only to buildings used as a factory or workshop, it is further provided in section 3 of the act (Code, § 54-404), that "The municipal authorities of any town or city . . may, by ordinance, provide that the provisions of this act shall apply to all

buildings, not used as private residences, three or more stories in height, within their limits." Here is a general law specifically dealing with the subject of authorizing all municipalities, including the City of Atlanta, to make applicable the provisions of the law to all buildings, except private residences, that are more than three stories in height. The very object of the law is the protection of occupants of buildings against the hazard of fire. The methods for affording that protection are specified in the law. That municipalities are permitted, but not required, to adopt ordinances making the provisions of law applicable, does not take it out of the above rule that a general law supersedes a charter provision on the same subject-matter. *Mathis* v. *Jones,* 84 *Ga.* 804 (11 S. E. 1018); *Freeney* v. *Pape,* 185 *Ga.* 1, 6 (194 S. E. 515); *Hood* v. *Burson,* 194 *Ga.* 30, 33 (20 S. E. 2d, 755). Had the building in question conformed to the requirements of this general law and the fire-extinguishing equipment on each floor been provided, the tragedy might have been avoided. The failure of the municipality to exercise the authority conferred by this law is alone the reason why the building was not thus equipped.

I have not thought it necessary to examine the charter provisions of the City of Atlanta to see if the ordinances in question were authorized by the charter, since any such provisions would by the general law be rendered invalid. If the charter authority for the adoption of the ordinances is invalid, it logically follows that the ordinances themselves are likewise invalid.

From what has been said I think it follows that the ordinances pleaded and relied upon are void, and that as to them the petition alleged no cause of action and should have been stricken on demurrer.

I am authorized by Justices Head and Candler to state that they concur in the foregoing dissent.

JENKINS, Chief Justice, concurring specially as to the ruling made in division 1 (*b*, 2) of the headnote and corresponding division of the opinion. While in my opinion the case of *City of Atlanta* v. *Hudgins,* 193 *Ga.* 618, reached the correct conclusion as applied to the facts of that case, I do not think it applicable authority to the facts of this case. In the *Hudgins* case, where a general statute set up special named conditions and limitations under which and before which a suit could be maintained

against a municipality, the court held that this general law covered, at least in a superficial way, the whole ground of the subject-matter, so as would prevent a municipality under charter authority from imposing other and additional restrictions. In other words, in that case the legislature had provided the conditions precedent in bringing such a suit. It provided that they should be thus and so, while the ordinance sought to declare that such should not be the conditions, but that in order to bring such a suit the claimant should be required to comply, not only with the conditions set forth by the general law authorizing such a suit, but that he must meet certain other requirements as well —or else be debarred from suing in accordance with and under the permission of the provisions of the general law. Accordingly, to my mind the case referred to is not authority in the instant case. Here the legislature has provided in a very limited way for protection against fire hazard in certain manufacturing plants of more than two stories, but in two respects only. It requires that in such buildings stairways of a named character be provided, and that each floor of such buildings be supplied with fire equipment. It further provided, manifestly in order to avoid any possible inference of a negative pregnant, that municipalities could (if they chose, make such rules applicable to all other such buildings irrespective of whether or not they were manufacturing plants. It does not seem reasonable to infer that the legislature, by thus venturing into this one narrow, particular segment of the vast general field of protection against fire hazard, could possibly have meant to declare or even to suggest by implication that it had thus covered the whole field of fire-protective legislation, so that any and all of the almost countless ordinances and fire codes which the various cities had found that conditions had rendered necessary should thereupon be rendered null and void, or that it thereby effected an absolute bar to any and all future protective measures which municipal authorities might deem acutely necessary and proper.

The statute involved in the instant cast is extremely narrow in its scope and relates to only two named factors in a vast field of protective legislation against fire hazards. The scores upon scores of conditions which might render other additional and independent legislation not only proper but vital and necessary

to the public welfare are in no wise even touched upon by this one general statute. Surely all that had been already done by municipal authorities in the same general field but of entirely distinct and different character has not been thus stricken down by mere implication. Surely the legislature did not mean to thus completely tie the hands of the local governing authorities so as to prevent their future functioning in this wide domain of legislation, however dire the necessity might be. When the legislature provided two narrow, particular, stated provisions for manufacturing plants with respect to fire hazards, and, in order to make it plain that they did not thereby intend to tie the hands of the cities by *limiting* or prohibiting such provisions except as to factories, wrote into the law that city ordinances might make the rules applicable to other similar buildings though not used for manufacturing purposes, it did not mean to thus tell the cities by mere implication that "thus far you can go but no further." Certainly the law did not *say* any such thing. What it did was to barely touch the surface of an immense field of legislation. Under the contrary view, a city would be utterly helpless to prohibit highly inflammable wooden structures in central areas or inflammable roofing in residential areas, where their presence might threaten wide-spread conflagration. To this writer, it would seem just as unreasonable to write into the statute under consideration an implied annulment of all that multitude of municipal ordinances dealing with entirely different factors and conditions in this vast field of legislation as it would be to annul all ordinances within the domain of the public health or taxation, because there too the State may have passed general statutes, which touch upon some particular phase of these subjects. It may well be true enough that the legal effect of the statute, in authorizing cities to adopt these two particular provisions so as to make them apply to buildings of like character even though not used for manufacturing purposes, may be precisely the same as if the legislature had required such measures to begin with; still that would not seem to bear upon the question here presented. The question is, has the legislature in one way or the other covered the entire field of fire protective legislation? That is the question, and the only question, since, if it has not, superficially or otherwise, undertaken to do so, the multitude of exist-

134

ing ordinances are not nullified, nor are the hands of the city authorities tied in their efforts to thus promote the public welfare and safety.